# Trexler Lumber Co. *v.* Allemannia Fire Ins. Co., Appellant.

*Insurance—Wind insurance — Construction of policy — Resolving doubt.*

1. Where there is any doubt as to the proper construction of an insurance policy, such doubt should be resolved in favor of the insured.

*Insurance — Wind insurance — Injury by snow — Concurrent causes—"Direct" cause—Proximate cause—Words and phrases—Evidence—Expert—Photographs— Time when taken — Admission of evidence—Discretion of court.*

2. Where, under a policy of wind insurance, the insurer is liable only if a windstorm is the direct cause of the damages, the word "direct" will be construed as meaning "immediate" or "approximate" as distinguished from "remote" or "incidental."

3. In an action on a wind policy covering lumber sheds, where there is conflicting evidence as to whether the injury was caused by a windstorm or by a weight of snow from a previous snowstorm, plaintiff must prove by the weight of the evidence that the windstorm was the dominant and efficient cause of the fall of the sheds. Such a case is for the jury.

4. Where a windstorm covered by the policy is the efficient cause of the loss, the fact that another outside cause, such as the weight of snow contributed thereto, will not relieve the insurer.

5. An expert for defendant, testifying from data observed by himself sixty miles away, and from reports of others, to the effect that there was no windstorm in the locality of the sheds on the night in question, cannot, as a matter of law, overcome evidence of numerous local witnesses to the contrary.

6. On the trial of such case it is not error to exclude defendant's photographs of the locus in quo, taken five days after the collapse of the sheds, when in the meantime the debris had been removed from the streets and passageways and the surroundings presented a changed appearance.

7. The question of when photographs shall be received in evidence is largely for the discretion of the trial judge.

Argued February 1, 1927.  Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART and SCHAFFER, JJ.

Appeal, No. 49, Jan. T., 1927, by defendant, from judgment of C. P. Lehigh Co., June T., 1925, No. 93, on verdict for plaintiff, in case of Trexler Lumber Co. v. Allemannia Fire Insurance Co. of Pittsburgh. Affirmed.

Assumpsit on a policy of wind insurance. Before Reno, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $6,250. Defendant appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*Horace Michener Schell,* with him *Aubrey, Steckel & Senger,* for appellant.—Photographs of the insured building do not become inadmissible because the streets bounding the property were cleared of debris before the photographs were taken.

Where a policy insures against "direct" loss or damage by windstorm, the word "direct" means "solely": Warmcastle v. Ins. Co., 201 Pa. 302.

Where there is nothing in the evidence to indicate whether the collapse of the building was due to windstorm or snow load, the jury should not be permitted to find that it was due to windstorm: Reese v. Clark, 146 Pa. 465; Alexander v. Water Co., 201 Pa. 252.

Where the issue involves wind direction at a particular time and place, testimony of casual observers cannot be received to contradict the records of the weather bureau: Marland v. R. R., 123 Pa. 487; Barton v. Transit Co., 283 Pa. 577.

An assured cannot recover under a policy insuring against direct loss or damage by windstorm if the snow load contributed to the loss.

*Reuben J. Butz,* of *Butz & Rupp,* for appellee.—A policy of insurance will be construed in favor of the in-

sured so as not to defeat, without plain necessity, his claim to the indemnity: Norlund v. Ins. Co., 282 Pa. 389; Clum, v. Casualty Co., 281 Pa. 464.

Photographs of the insured buildings, taken five days after their demolition, are not admissible in the absence of proof that they show conditions as they existed immediately after their demolition.

The meaning given to the word "direct" is "immediate" or "proximate" as distinguished from remote: Warmcastle v. Ins. Co., 210 Pa. 362.

In view of the conflicting evidence as to the cause of loss or damage as between windstorm or snow pressure, and in the absence of evidence that the building had been weakened by snow pressure before the collapse of the ruined building, the insurer is entitled to recover, where the jury finds that a windstorm and not snow pressure was the efficient and dominating cause of the demolition: Howard Fire Ins. Co. v. Transport Co., 79 U. S. 194.

There was no sufficient evidence to permit the jury to find that a snowstorm caused the loss.

OPINION BY MR. JUSTICE WALLING, March 14, 1927:

This appeal by defendant is from judgment entered on a verdict for plaintiff in an action on a policy insuring against direct damage caused, inter alia, by windstorms.

An examination of the record discloses no reversible error. The policy covered plaintiff's lumber sheds, which extended five hundred and fifty feet along the north side of Liberty Street from Sixteenth to Seventeenth Streets, Allentown, and extended northerly therefrom two hundred and sixty-eight feet. They comprised, practically four attached sheds, each covered by an oval roof, the top of the latter being forty-three feet high near the west side and thirty-four feet near the east side. The sheds were of wood, supported by uprights resting on concrete piers, and partly enclosed by boards. There were many open spaces for the entrance of railroad cars,

trucks, etc.  In some other places it was sheeted near the top and open at the bottom.  The sheds were intended for the storage of lumber and other like building material in large quantities.  The territory to the north and west was largely open country, but it was somewhat built up to the east and south.  On January 2, 1925, during the life of the policy, the sheds fell and were destroyed.  The policy expressly excluded loss caused by snowstorms, and the pivotal question at the trial was whether the fall of the sheds resulted from a windstorm or from a snowstorm, or snow pressure on the roofs. All agree it began snowing about one o'clock a. m. that day and continued until about three o'clock p. m.  Then there was a slight drizzle of rain or sleet for possibly fifteen or twenty minutes.  Later in the afternoon the wind arose and plaintiff's evidence tended to show blew from the west and north or northwest with such violence as to constitute a terrific windstorm and to blow down and destroy the sheds in the early evening.  This contention was supported by much direct testimony of those out in the storm and also by the circumstance that parts of the shed roofs and heavy pieces of lumber stored therein were found in both Liberty and Sixteenth Streets, so as to temporarily obstruct traffic therein, and necessitate roping off the streets.  There was evidence that the same evening a roof was blown from another building in the neighborhood, where the wind carried heavy boards and roof material a considerable distance. Also that live trees of considerable size were broken off above the ground.  Further, there was the evidence of street car officials and employees of the state highway department that the wind was such as to cause the snow to drift into and fill up street railway tracks and public highways in and about Allentown almost as soon as opened.  Others testified to so intense a wind that evening as to make facing it nearly impossible.  In view of all this and other like evidence the trial judge could not say there was no windstorm in Allentown that night.

True, evidence for the defense, including that of weather reports and weather observers, tended strongly to disprove plaintiff's contention, but the credibility of the evidence was for the jury. That an expert witness, testifying from data observed by himself sixty miles away, and from reports of others, said there was no windstorm in Allentown that night cannot, as matter of law, overcome the positive evidence of numerous local witnesses to the contrary. The same is true as to the direction of the wind; plaintiff's witnesses said it was from the northwest, while those for defendant said it was from the northeast. If it blew down the sheds, it is not highly important from just which direction it came. That the lumber and roofing material seem to have been carried to the south and east would tend to corroborate plaintiff as to the direction of the wind.

It was defendant's contention that snow pressure on the roofs caused the sheds to collapse and their evidence tended to show a fall of some twenty inches of heavy snow during that day, and testimony is offered as to the enormous weight of this body of snow upon so large a surface. Here again there was a sharp conflict in the evidence, that for plaintiff indicating a fall of approximately sixteen inches of very light, fluffy snow and that three-fourths thereof had blown away before the sheds fell. If that is true and, in support of the verdict we must assume the truth of plaintiff's evidence and every inference properly deducible therefrom, then there was an average depth of only about four inches of light snow on the shed roofs when they fell; which of course would be negligible. That the roofing material and other lumber landed in the streets might seem to indicate a windstorm rather than snow pressure as the cause of the collapse; while the drizzle of rain might seem to corroborate the defendant as to the snow being heavy. However, that was for the jury.

Under the terms of the policy defendant was liable only if the windstorm was the direct cause of the dam-

ages. The word "direct," as there used, means "immediate," or "approximate," as distinguished from "remote" or "incidental." See Western Assur. Co. v. Hann, 78 So. (Ala.) 232. In this connection the trial judge properly charged the jury, in effect, that to recover, plaintiff must prove by the weight of the evidence that the windstorm was the dominant and efficient cause of the fall of the sheds, but declined to say that if snow pressure contributed in any degree to such fall there could be no recovery. In adjusting the liability of an insurance company, if the risk insured against was the proximate cause of the loss there can be a recovery, although a peril outside of the policy may have remotely or incidentally contributed thereto: Insurance Co. v. Transportation Co., 79 U. S. 194. As stated in Hartford Steam Boiler I. and Ins. Co. v. Pabst Brewing Co. (Wis.), 201 Fed. 617, "In determining the cause of a loss for the purpose of fixing insurance liability, when concurring causes of the damage appear, the proximate cause to which the loss is to be attributed is the dominant, the efficient one that sets the other causes in operation; and causes which are incidental are not proximate, though they may be nearer in time and place to the loss." While the peril insured against must be the approximate cause of the loss it need not be the sole cause. For example, in the instant case, if the sheds were directly destroyed by the windstorm, that snow on the roofs may have remotely contributed to the result, would not defeat plaintiff's claim. In fact, under plaintiff's evidence, it is not clear that snow pressure contributed, even remotely, to the result; but conceding it did, that would not defeat plaintiff's right of action. Where a windstorm, covered by the policy, was the efficient cause of the loss, the fact that other outside causes contributed thereto will not relieve the insurer: Jordan v. Iowa Mutual Tornado Ins. Co., 130 N. W. (Iowa) 177, and see Richelieu and O. Nav. Co. v. Boston Marine Ins. Co., 26 Fed. (Mich.) 596, 604.

While there was here a stubborn contest as to liability there was none as to the amount thereof, or any question of apportionment between different companies or on account of different causes of loss; for at the inception of the trial there was an admission of record: "That the amount of the liability of defendant company is $6,250, if it is liable for any sum whatsoever"; for which sum the verdict was rendered.  Moreover, there was no proof to warrant any apportionment or abatement of liability, had the question been raised; for, under the evidence, defendant was either liable for the $6,250 or nothing.

It was not a case where it was impossible to determine from which of concurrent causes the loss resulted; for plaintiff's evidence pointed to the windstorm as the cause, while that of defendant pointed to snow pressure. Such case can be properly determined only by triers of the facts.

It was not error to exclude defendant's photographs of the locus in quo, taken five days after the collapse of the sheds, when meantime the debris had been removed from the streets and passageways and the surroundings presented a changed appearance.  In any event, the question of when photographs shall be received in evidence is largely for the discretion of the trial judge (Kaufman v. Nat. Lumber Ins. Co., 231 Pa. 642; Beardslee v. Columbia Township, 188 Pa. 496, 502), and here we find no abuse thereof.

Were there any doubt as to the proper construction of the instant policy, which to our mind there is not, it should be resolved in favor of the assured: Norlund v. Reliance Ins. Co., 282 Pa. 389; Clum v. New Amsterdam Cas. Co., 281 Pa. 464; 1 Cooley on the Law of Insurance, p. 636; 1 Joyce Law of Insurance (2d ed.), section 212.  The case was well tried and the evidence was ample to support the verdict.  See Warmcastle v. Nat. Ins. Co., 210 Pa. 362.

The judgment is affirmed.