## Markovitz v. Miller's Mutual Insurance Co.

*Michael S. Ramage,* for plaintiffs.

*John W. Walter,* for defendant Miller's Mutual Insurance Co.

LEHRER, *J.,* June 26, 1989 — Before the court is defendant Miller's Mutual Insurance Company's motion for summary judgment. The underlying case is a declaratory-judgment action in which plaintiff seeks to obligate Miller's Mutual to defend and provide coverage for a personal injury action that was brought against plaintiff Markovitz and plaintiff's decedent Jack J. Rader's estate for an injury that occurred on their premises Fairfax Apartments.

For the reasons stated within, defendant's motion for summary judgment will be granted.

The procedural history and facts of record upon which this opinion is based are as follows:

Plaintiff's decedent, Jack J. Rader, owned the premises at 4147 Locust Street known as the Fairfax Apartments. Rader purchased a special multi-peril insurance policy, SMP 5414, from moving defendant which expired on April 1, 1983. As this expiration date approached, Rader purchased additional coverage from moving defendant to cover the period April 1, 1983 to April 1, 1986, and paid the first installment of the premium, $8,169. This insurance policy was SMP 8252 and was identical to SMP 5414 except for the dates of coverage.

On March 31, 1983, one day before the SMP 5414 expired and SMP 8252 took effect, Rader sold the

Fairfax Apartments to defendants, Alan Klein and The Fairfax Apartment Associates. Rader cancelled SMP 8252 effective April 1, 1983 and the premiums were refunded.

On April 7, 1983, seven days after the policy was cancelled by Rader, Hope Lovett was allegedly sexually assaulted criminally at the Fairfax Apartments. Ms. Lovett instituted suit on March 11, 1985 in an action styled *Lovett v. Klein,* Philadelphia County, March term, 1985, no. 1761, in which Rader was named as a defendant.

Rader has called upon moving defendant to defend and indemnify him in *Lovett v. Klein* despite the fact that SMP 5414 had expired on April 1, 1983 and SMP 8252 was effectively cancelled by plaintiffs on April 1, 1983, seven days before the underlying incident allegedly occurred. Moving defendant denied coverage and the instant action was commenced.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file and any supporting affidavits clearly demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035; *Small v. Seldows Stationery,* 617 F.2d 992 (3d Cir. 1980).

Moving defendant alleges that they are entitled to judgment as a matter of law because plaintiff's policy was effectively cancelled seven days prior to the alleged underlying incident.

Each of the insurance policies in question are "occurrence" policies, and both provide that Miller's Mutual "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury . . . to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured. . . . "

Both policies define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury . . . neither expected nor intended from the standpoint of the insured." Any ambiguity in the policy must be resolved against the insurer. *DiFabio v. Centaur Insurance Co.*, 366 Pa. Super. 590, 531 A.2d 1141 (1987).

The controlling question in this case is whether or not the allegations of the underlying tort action, if proven, would be an occurrence that would trigger policy coverage.

Plaintiff argues that any "landlord malpractice" committed occurred prior to the end of March 31, 1983, and prior to the date of the transfer of title and control to Fairfax Apartment Associates, and that this constitutes the triggering "occurrence" that resulted in the alleged assault of Ms. Lovett.

We do not agree.

In the *Lovett v. Klein* complaint of the motion record herein, Lovett alleges that she was tenant under a lease first entered into in 1977, that she:

"(8) [H]ad been induced to enter into that lease by the representations of the agents and employees of the defendant Rader that the Fairfax Apartments was a secured building, that all entrances and exits to the building other than the front entrance would be kept locked at all times, and that entrance through the unlocked front entrance would be controlled at all times by the presence of a guard at the front desk.

"(9) Contrary to the representations of the defendant Rader by his agents and employees, to the dictates of reasonable conduct, and to the requirements of applicable Philadelphia ordinances, various entries and exits to the Fairfax Apartments were left unlocked and unguarded and implements

and devices giving ready access from the street to those entries and exits were left unsecured and in close vicinity to them on April 7, 1983, and for some substantial period of time prior to that date.

"(10) On April 7, 1983, two persons gained entry to the Fairfax Apartments through one of the said unlocked and unguarded doors, using the implements left about by defendants, and thereafter by means of force and threats robbed the plaintiff, committed assault and battery upon her, threatened to kill her, imprisoned her, and committed criminal sexual acts upon her. . . . " The negligence of the defendants consisted of the following:

(a) Failing to keep all unguarded entrances to the Fairfax Apartments locked at all times;

(b) Failing to provide adequate locks for the entrances to the Fairfax Apartments:

(c) Failing to properly inspect the entrances and exits of the Fairfax Apartments to determine that they were properly locked at all times;

(d) Leaving implements and devices lying about unsecured through the use of which trespassers could readily gain access to the Fairfax Apartments;

(e) Violations of the ordinances of the City of Philadelphia and the statutes of the Commonwealth of Pennsylvania, including, inter alia, those concerning the providing of proper locks for the doors of multifamily residences;

(f) Failing to provide properly trained and instructed night personnel.

*Keystone Automated Equipment v. Reliance,* 369 Pa. Super. 472, 535, A.2d 648 (1988) is controlling here. There, the question was whether or not the sale of defective equipment during the policy period was an occurrence triggering coverage for injuries inflicted when the equipment was installed in Africa, which was outside of the geography covered by

the comprehensive policy (defined territory was the United States and Canada).

Significantly, the Superior Court in Keystone adopted the opinion of the Third Circuit in *Appalachian Insurance Company v. Liberty Mutual Insurance Company*, 676 F.2d 56, 61-2 (3d Cir. 1982) which stated:

"There can be no question but that the aspect of the occurrence which must take place within the policy period . . . is the 'result,' that is, the time when the accident or injurious exposure produces personal injuries." *Appalachian Insurance Company*, 676 F.2d at 62.

The *Keystone* court therefore held that the occurrence was in Africa, the place of the ultimate injury.

The above-cited allegations in the complaint all occurred during the coverage period extended and contained beyond it, but the injury occurred after the policy terminated.

Therefore, as a matter of law, there is no coverage.

## ORDER

And now, June 26, 1989, upon consideration of defendant, Miller's Mutual Insurance Company's motion for summary judgment, it is hereby ordered and decreed that defendant, Miller's Mutual Insurance Company's motion for summary judgment is granted.