628 A.2d 880

AMERICAN STATES INSURANCE COMPANY, a Corporation

v.

MARYLAND CASUALTY COMPANY, a Corporation, Appellant.

AMERICAN STATES INSURANCE COMPANY,
a Corporation, Appellant,

v.

MARYLAND CASUALTY COMPANY, a Corporation.

Superior Court of Pennsylvania.

Argued Feb. 9, 1993.

Filed July 21, 1993.

Bernard J. McAuley, Pittsburgh, for Maryland Cas.

Louis Anstandig, Pittsburgh, for American State Ins.

Before KELLY, JOHNSON and HESTER, JJ.

JOHNSON, Judge:

In this action, we are asked to determine whether American States Insurance Company, an umbrella insurer, may maintain an action for bad faith grounded on equitable subrogation against Maryland Casualty Company, the primary insurer. Concluding that an umbrella insurer, in breach of its duty to defend, may not maintain an action for bad faith against the primary insurer based on equitable subrogation, we affirm.

American States Insurance Company brought this action against Maryland Casualty Company alleging bad faith in the defense, negotiation and settlement of the underlying personal injury action captioned *Stiles v. The Pennsylvania Rural Electric Association,* Docketed at No. 3278 of 1979 in the Court of Common Pleas of Westmoreland County, Pennsylvania.

On July 18, 1978, Benjamin Stiles, a lineman for Southwest Central Rural Electric Cooperative Corporation, was injured

when a co-worker, in the mistaken belief that the lines were clear, energized the line which Stiles was installing. Stiles suffered electrical burns to the lower extremities, ultimately requiring amputation of both legs. Stiles sued the Pennsylvania Rural Electric Association (PREA), a non-profit trade association which provided safety training and instruction materials to members of the trade association including Stiles' employer. Stiles alleged that PREA was negligent in failing to provide adequate safety training and/or instruction to the employees of the Southwest Central Rural Electric Cooperative. Stiles further alleged that PREA's negligence was the proximate cause of his injuries, asserting that PREA's negligence in failing to provide adequate safety training and/or instruction was the sole cause of his injuries.

At the time of Stiles' injury, three separate PREA insurance policies potentially applied to his claim: (1) A one million dollar three-year multi-peril policy providing bodily-injury and property-damage liability coverage issued by Maryland Casualty on April 15, 1977. The Maryland Casualty policy contained a Professional Liability Exclusion Endorsement which excluded "bodily injury or property damage [sustained] due to the rendering or the failure to render any professional service." (2) An American States umbrella liability policy issued to PREA on April 18, 1978, with bodily injury and property damage liability limits of four million dollars. Under the umbrella policy, American States agreed to indemnify PREA for losses in excess of those claims covered by the Maryland Casualty policy. For the claims involving professional negligence, not covered by the Maryland Casualty policy, American States agreed to provide primary coverage and a defense to PREA. This last provision is known as a "drop down" clause. (3) An American States three year comprehensive liability policy issued on March 18, 1978 to Allegheny Electric Co-op., Inc. (AEC), a PREA subsidiary, with bodily injury and property damage liability in the amount of one million dollars.

Maryland Casualty, upon notice of the Stiles' suit, informed PREA that it would deny coverage based on the professional service exclusion in its policy. American States, however,

refused to defend PREA and denied the applicability of the drop-down provision in its policy. American States took the position that its responsibility was limited to excess coverage on the Maryland Casualty policy. During Stiles' lawsuit, Maryland Casualty was unaware of the AEC policy and consequently did not seek the participation of American States in the defense of PREA on the basis of the AEC policy. PREA filed a declaratory judgment action in the United States District Court for the Middle District of Pennsylvania against both American States and Maryland Casualty, which was subsequently withdrawn, alleging that either one or both insurers owed it a defense. Maryland Casualty then agreed to defend PREA in the Stiles' lawsuit, subject to a nonwaiver agreement, and Maryland Casualty did defend PREA until Stiles' lawsuit was settled following the jury verdict.

The Stiles' proceedings were monitored by American States through counsel specifically employed for that purpose. However, during the Stiles' lawsuit, American States refused to participate in PREA's defense, even though American States and Maryland Casualty had, on occasion, discussed, but never resolved, the possibility of a joint settlement offer. On July 21, 1980, Stiles' counsel made a written settlement demand for one million dollars to Maryland Casualty. Following the rejection of this demand, American States' representatives were present during an ensuing pre-trial conference at which Stiles' settlement demand for three million dollars was discussed and also rejected.

On May 3, 1982, the first day of trial in the Stiles' action, the court permitted Stiles to orally amend his complaint to include allegations of negligent hiring and negligent supervision against PREA. On May 12, 1982, the jury returned a verdict in favor of Stiles for $7,500,000. While post-trial motions were pending, the Stiles' lawsuit was settled for five million dollars. American States paid $3,073,300 of the settlement and Maryland Casualty Company paid the balance, $1,926,700.

Subsequent to the Stiles' settlement, American States filed this action against Maryland Casualty alleging bad faith in the

defense, negotiation and settlement of the Stiles' claim. On May 2, 1989, on cross-motions for partial summary judgment, a partial summary judgment was entered for American States. The trial court determined that since the professional service exclusion was inapplicable, Maryland Casualty's policy covered Stiles' claims against PREA. Following the trial court's refusal to certify the issue for an interlocutory appeal, this Court denied Maryland Casualty's Petition for Review on December 5, 1989.

After the denial of the Petition for Review, both American States and Maryland Casualty filed cross-motions for summary judgment on the remaining legal issues. On May 22, 1991, the trial court issued an Opinion and Order holding that under the terms of its umbrella policy, American States had a duty to defend PREA in the Stiles' lawsuit until it could confine the Stiles' claim to a recovery that was outside the scope of the "drop down" provision of the umbrella policy. The trial court also concluded that the AEC policy did not apply to the Stiles' claim and therefore, American States had no duty to defend PREA under the AEC policy.

On October 22, 1991, the trial court issued a Supplemental Opinion and Order affirming its earlier determination but concluding that American States had a duty to defend PREA in the underlying lawsuit pursuant to the terms of its umbrella policy. The trial court also granted partial summary judgment in favor of Maryland Casualty in accordance with its May 22, 1991 Opinion. Observing that American States had presumed that it was only an excess liability carrier, the trial court ordered the American States' claim against Maryland Casualty to be dismissed unless American States could establish either (i) that it confined all the Stiles' claims to a recovery outside the scope of the drop down provision of its umbrella policy or (ii) that it was involved in the defense of PREA in the Stiles' lawsuit. In addition, after consideration of the Maryland Casualty exceptions, the trial court permitted Maryland Casualty to raise a defense based on the AEC policy issued by American States if Maryland Casualty could prove

that PREA was an additional named insured on the AEC policy.

On April 13, 1992, the trial court granted Maryland Casualty's Motion for Nonsuit, American States having failed to establish that it had confined all the Stiles' claims to a recovery outside the scope of the drop down provision of its umbrella policy or that it was involved in the defense of PREA in the Stiles' lawsuit. On July 13, 1992, the Honorable R. Stanton Wettick, Jr., of the Court of Common Pleas of Allegheny County dismissed the post-trial motions of both parties and entered final judgments, dismissing American States' bad faith claim against Maryland Casualty as well as dismissing Maryland Casualty's counterclaim against American States. This appeal followed.

We are initially presented with the direct appeal of American States at No. 01255 Pittsburgh 1992, and its cross-appeal at No. 01291 Pittsburgh 1992. American States argues that the trial court erred in: (1) ruling that American States had a duty under its umbrella policy to defend PREA in the Stiles' lawsuit; (2) placing the burden of proof on American States to show that the Stiles' claims were outside the scope of its drop down provision or proving that American States participated in the defense of PREA; and, (3) making certain evidentiary rulings during the Maryland Casualty counterclaim. Maryland Casualty in its cross-appeal at No. 01241 Pittsburgh 1992, contends that the trial court erred in finding that the AEC policy was inapplicable to the claims asserted against PREA in the underlying lawsuit and dismissing its counterclaim.

## I. Appeal by American States Insurance Company at No. 01255 Pittsburgh 1992

This Court's scope of review of a grant of summary judgment is plenary. *Briggs v. Erie Insurance Group*, 406 Pa.Super. 560, 594 A.2d 761 (1991). In reviewing an order granting a motion for summary judgment, we must view the record in the light most favorable to the non-moving party. *Dorohovich v. West American Insurance Co.*, 403 Pa.Super. 412, 589 A.2d 252 (1991). All doubts as to the existence of a

genuine issue of material fact must be resolved against the moving party. *Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205 (1991). Moreover, in summary judgment proceedings, it is not the court's function to determine the facts, but only to determine if an issue of material fact exists. *Godlewski v. Pars Manufacturing Co.,* 408 Pa.Super. 425, 597 A.2d 106 (1991). Summary judgment should only be granted in those cases which are free and clear from doubt. *Spain v. Vicente,* 315 Pa.Super. 135, 461 A.2d 833 (1983).

■ Summary judgment is proper only where the pleadings, depositions, answers to interrogatories, admissions of record and affidavits on file support the trial court's conclusion that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035(b); *Penn Center House, Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900 (1989). Under this standard, a reviewing court should overturn the trial court's grant of a motion for summary judgment where there is an error of law. *Peffer v. Penn 21 Associates,* 406 Pa.Super. 460, 594 A.2d 711 (1991).

■ The construction of a writing such as a policy of insurance is a question of law over which, as an appellate court, we need not defer to the findings of the trial court. *United Services Auto. Assn. v. Elitzky,* 358 Pa.Super. 362, 368, 517 A.2d 982, 985 (1986). The principles governing the interpretation of an insurance contract are well-settled:

> The task of interpreting a contract is generally performed by a court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language is clear and unambiguous, a court is required to give effect to that language.

*Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 505, 469 A.2d 563, 566 (1984) (citations omitted).

In the present case, PREA held dual insurance coverage: a general liability policy from Maryland Casualty and an umbrella policy from American States. Typically, an umbrella carrier agrees to provide not only excess or umbrella coverage on claims within the ambit of the insured's general liability policy, but also primary coverage for those claims not included in the insured's basic general liability coverage. Appleman, *Insurance Law & Practice* § 4909.85.

Initially, American States argues that the trial court erred in ruling that it had a duty under its umbrella policy to defend PREA in the Stiles' lawsuit. We disagree. The clause in the American States umbrella policy, in pertinent part, provides:

> With respect to any occurrence not covered by an underlying policy listed in Schedule A hereof or any other underlying policy collectible by the Insured, but covered by the terms and conditions of this policy except for the amount of retained limits specified in Item 3(c) of the declarations, the company shall:
>
> (a) defend any suit against the Insured alleging such injury or destruction and seeking damages on account thereof, even if the suit is groundless, false or fraudulent, but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient.

Schedule A of the American States Policy lists Maryland Casualty's multi-peril policy, No. SM 37351935 as an underlying policy. The Maryland Casualty policy provided coverage for losses resulting from bodily injury or property damage with the exception of a Professional Liability Exclusion Endorsement which "does not apply to bodily injury or property damage [sustained] due to the rendering or the failure to render any professional service." The American States' umbrella policy, on the other hand, did not exclude such damages but provided primary coverage for those areas not included in the Maryland Casualty underlying policy. Based on this, the trial court determined that Maryland Casualty was the primary insurer for claims not involving professional negligence,

while American States was the primary carrier for any claims involving professional negligence. Trial Court Opinion, dated 10/22/91 at 2. It was from this starting point that the trial court analyzed the duty of American States, if any, to defend PREA in the underlying lawsuit.

 The trial court determined that American States owed a defense to PREA for reasons of public policy. Trial Court Opinion, dated May 22, 1991, at 17–20; Trial Court Opinion, dated October 22, 1991, at 2–7. While we do not reject the public policy rationale set forth by the trial court, the appropriate standard must, nonetheless, be applied. As Judge Aldisert noted in *Pacific Indemnity Co. v. Linn*, 766 F.2d 754 (C.A. 3, 1985):

> Under Pennsylvania law, an insurance company is obligated to defend an insured whenever the complaint filed by the injured party may *potentially* come within the policy's coverage. *Gedeon v. State Farm Mutual Automobile Insurance Co.*, 410 Pa. 55, 58, 188 A.2d 320, 321–22 (1963); *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 152 A.2d 484 (1959); *Wilson v. Maryland Casualty Co.*, 377 Pa. 588, 105 A.2d 304 (1954); *Seaboard Industries v. Monaco*, 258 Pa.Super. 170, 392 A.2d 738 (1978); *see C.H. Heist Caribe Corp. v. American Home Assurance Co.*, 640 F.2d 479, 483 (3d Cir.1981). The obligation to defend is determined solely by the allegations of the complaint in the action. *Wilson*, 377 Pa. at 594, 105 A.2d at 307; *see C.H. Heist Caribe Corp.*, 640 F.2d at 483 ("the factual allegations of [the] complaint against [the] insured are controlling.") The duty to defend remains with the insurer until the insurer can confine the claim to a recovery that is not within the scope of the policy. *Cadwallader*, 396 Pa. 582, 152 A.2d at 484; *Seaboard Industries*, 258 Pa.Super. 170, 392 A.2d 738.

766 F.2d at 760. (Emphasis in the original). Moreover, if an insurer seeks to avoid its duty to defend under the policy on the basis of an exclusion to that policy, the insurer bears the burden to prove the applicability of that exclusion. *See A.G. Allebach Inc. v. Hurley*, 373 Pa.Super. 41, 540 A.2d 289 (1988).

The trial court properly determined that the duty of American States to defend PREA must initially be determined by the allegations of the complaint. Trial Court Opinion, dated 5/22/91, at 16. Proceeding to examine the allegations in the Stiles' complaint, the trial court found the complaint to include claims which potentially involved allegations of professional negligence on the part of PREA. The trial court also found that the Stiles' complaint stated claims to which the American States' umbrella policy potentially applied. *Id.* at 15–21. From this, the trial court concluded that American States as well as Maryland Casualty had the duty to provide a defense to PREA. "This duty continued at least until American States could confine the Stiles' claims to a recovery outside the scope of the Maryland Casualty's professional service exclusion." Trial Court Opinion, dated 5/22/91 at 20–21.

American States argues that at the time the Stiles' complaint was filed, American States had the Maryland Casualty policy, as well as the complaint, reviewed by "numerous individuals within American States, as well as [by] American States outside counsel. All ... were of the opinion that the Maryland Casualty Policy provided coverage." Appellants' Brief at 28. We observe that American States having used the wrong map, reached the wrong destination. The appropriate question for American States to have posed was whether the Stiles' complaint stated claims to which the American States' umbrella policy potentially applied. Even a casual review of the facts of this case would suggest that the umbrella policy potentially applied: not only was there a colorable professional service claim but the severity of Stiles' injuries augured a jury award that might well exceed Maryland Casualty's one million dollar policy limits and call upon the coverage afforded by the umbrella policy. American States is not positioned to claim surprise at the $7,500,000 jury verdict in the Stiles' lawsuit.

Next, American States cites to *Brugnoli v. United National Insurance Co.*, 284 Pa.Super. 511, 426 A.2d 164 (1981), as authority for its contention that American States participated in the defense of PREA. In *Brugnoli*, the carri-

er, after sending a nonwaiver agreement to the insured, agreed that the insured's private counsel would conduct the defense. The present case bears little resemblance to *Brugnoli*. American States did not reserve its rights to disclaim policy coverage prior to defending its insured. Rather, American States refused to defend its insured while using an attorney to protect its own interests. This cannot be equated to defending its insured pursuant to the policy.

American States also asserts that the trial court erred in overruling the partial summary judgment granted by the Honorable Robert Horgos on May 22, 1989, on the basis that the Professional Liability Exclusion Endorsement of the Maryland Casualty policy was "not applicable and did not exclude coverage to Pennsylvania Rural Electric Association for the Stiles['] claims and lawsuit." American States ignores the fact that the partial summary judgment was granted after the underlying litigation had terminated and claims that the trial court relieved Maryland Casualty of its duty to defend the entire suit, arguing:

> It is the law of this Commonwealth that if a Complaint contains one claim which potentially falls within the indemnity coverage of an insurance policy, the insurer must defend the entire action. *D'Auria v. Zurich Ins. Co.,* [352 Pa.Super. 231, 507 A.2d 857 (1986) ] ... An insurer is relieved of its obligation to defend the entire Complaint only when the insurer can show that the allegations of the Complaint are solely and entirely within the policy exclusion. [*Id.* ] Since the trial court acknowledged that Maryland Casualty had a duty to defend PREA in the Stiles['] action, Maryland likewise had the obligation to defend the entire Stiles['] action until it could prove the applicability of its exclusion.

Brief at 19. We reject American States' underlying premise in this argument. American States would have this standard imposed only on Maryland Casualty. However, this standard of law applies to American States also. Here, American States, itself in breach of the obligation to defend PREA, asks this Court to ignore the reality that Maryland Casualty de-

fended PREA until settlement terminated the Stiles' lawsuit. We decline to do so.

We believe the next claim of error is the central issue in this appeal. American States maintains that it is permitted to maintain a bad faith cause of action against Maryland Casualty based upon the doctrine of equitable subrogation as enunciated in *F.B. Washburn Candy Corp. v. Fireman's Fund*, 373 Pa.Super. 479, 541 A.2d 771 (1988). In *Washburn*, where a primary carrier wrongfully relied upon a policy exclusion to deny coverage and a defense to its insured, this Court held that the excess carrier, defending under a nonwaiver agreement was permitted to recover the cost of defense from the primary carrier where the jury verdict was less than the primary carrier's policy limits. The excess carrier in *Washburn* was never called upon to provide coverage.

The present case is the converse of *Washburn*. Here it is the primary carrier providing the defense. We note that equitable subrogation is an "equitable doctrine." The trial court properly concluded that, since the present case stated claims which potentially fell within the policy coverage of both insurers, American States could not assert a claim against Maryland Casualty unless it had fulfilled its own obligation to defend PREA. We view this as nothing more than an articulation of the adage that "one who seeks equitable relief must appear before the court with clean hands." *In re Francis Edward McGillick Foundation*, 406 Pa.Super. 249, 263, 594 A.2d 322, 329 (1991). We reject the notion that American States could shirk its own responsibilities yet charge Maryland Casualty with bad faith.

American States also complains that the trial court erred in improperly granting Maryland Casualty's Motion for Nonsuit. The Rules of Civil Procedure provide:

> In a case involving only one defendant, at the close of a plaintiff's case on liability and before any evidence on behalf of the defendant has been introduced, the court on oral motion of a party, may enter a nonsuit if the plaintiff has failed to establish a right to relief.

Pa.R.C.P. 230.1. A judgment of nonsuit is properly entered only if the factfinder, viewing the evidence and all reasonable inferences from the evidence in the light most favorable to the plaintiff, could not reasonably conclude that the elements of a cause of action have been established. *Morena v. South Hills Health System*, 501 Pa. 634, 462 A.2d 680 (1983). Our standard of review as an appellate court is identical:

> The standard of appellate review in cases which involve the propriety of an entry of compulsory nonsuit is to give the plaintiff the benefit of every fact and reasonable inference arising from the evidence, resolving all conflicts in the evidence in his or her favor. Additionally, a compulsory nonsuit is valid only in a clear case where the facts and circumstances lead to one conclusion—the absence of liability.

*Harvilla v. Delcamp*, 521 Pa. 21, 25, 555 A.2d 763, 764 (1989).

On October 22, 1991, the trial court ruled, as a preliminary matter, that before American States could assert a bad faith claim against Maryland Casualty, American States had the burden to establish either that: (1) it had confined all claims raised by Stiles to activities outside the scope of Maryland Casualty's professional service exclusion by the time Maryland Casualty rejected Stiles' offer to settle the lawsuit for the limits of the Maryland policy or (2) it was involved in the defense of PREA. Order of Court, dated 10/2/91. American contends that this burden has been met. However, our review of the record of the trial court hearing held on April 13–14, 1992, suggests that the entry of a nonsuit was proper.

 It is well-settled that, in this Commonwealth, the determination of proper coverage under an insurance contract is a question of law for the court. *Loomer v. M.R.T. Flying Service, Inc.*, 384 Pa.Super. 244, 558 A.2d 103 (1989). Nonetheless, in its case-in-chief, American States failed to show that it had moved for judgment or had taken any other steps to allow the court to resolve this basic issue before Maryland Casualty rejected Stiles' offer to settle the lawsuit for policy limits. American States merely offered the testimony of its

claims manager, Richard Spowls, to state in light of American States investigation and review of the facts, it was his opinion and the opinion of his superiors, that Maryland Casualty's Professional Liability Exclusion did not apply to the claims raised in the Stiles' lawsuit. Since the question of insurance coverage is a question of law for the court, the opinion testimony of American States' insurance claims manager, stating that insurance coverage does, or does not, exist, cannot constitute a *prima facie* showing that all claims had been confined to a recovery outside the scope of the American States' policy. Hence, we reject the conclusion that the trial court erred in the entry of a nonsuit on this issue.

Second, whether American States actually participated in the defense of PREA is a question for the factfinder, to be reversed only if the trial court abused its discretion. Faced with the unequivocal testimony of Sprowls that American States did not defend PREA in the underlying lawsuit, we find no abuse of discretion. Sprowls testified that he knew Maryland Casualty had retained the law firm of Weis and Weis (Weis) to defend PREA. Sprowls also testified that Weis prepared all necessary pleadings and conducted all discovery in the underlying lawsuit. Sprowls testified that American States had no relationship with Weis, nor did American States pay any of the legal fees to defend PREA. Outside counsel retained by American States, Louis Anstandig, testified that as coverage counsel for American States, he could not defend PREA in the Stiles' Lawsuit because of a conflict of interest between American States and PREA. While Anstandig testified that he had, at various times, contacted Weis with suggestions, it is patent that Anstandig made these suggestions to protect the interests of American States rather than for the purpose of defending PREA in the Stiles' lawsuit. We find no abuse of discretion by the trial court.

Finally, American States complains that the trial court erred in allowing Maryland Casualty to introduce a stipulation of facts into evidence as its Exhibit 32. Paragraph 17 of the stipulation of facts sets forth that American States did not afford PREA a defense in the underlying lawsuit. The trial

court expressly stated that it would not consider this stipulation to be evidence for purposes of the nonjury evidentiary hearing. In a nonjury proceeding, "... complaints as to rulings on evidence will not prevail on appeal unless it appears that the admission of the objectionable evidence led to and is the sole support [for], material findings made against the appellant...." *Appeal of Liggett,* 291 Pa. 109, 139 A. 619 (1927). Since this stipulation was not the sole support of the material findings against American States and the trial court expressly stated that it would not consider the stipulation by the parties, we find no merit to this issue.

## II. Cross–Appeal by American States Insurance Company at No. 01291 Pittsburgh 1991

We now turn to the issues raised by American States in its cross-appeal. In its cross-appeal, American States contends that the trial court erred in admitting into evidence certain microfilmed records and in allowing Maryland Casualty to call an employee of American States as if under cross-examination in Maryland Casualty's case in chief. Matters relating to the admissibility of evidence are within the trial court's discretion and an appellate court will not reverse the trial court's ruling absent a clear abuse of discretion. *Commonwealth v. Claypool,* 508 Pa. 198, 495 A.2d 176 (1985); *Commonwealth v. Jermyn,* 516 Pa. 460, 533 A.2d 74 (1987); *Commonwealth v. Cargo,* 498 Pa. 5, 444 A.2d 639 (1982); *Commonwealth v. Gonzales,* 415 Pa.Super. 564, 570, 609 A.2d 1368, 1370–1371 (1992).

Here, since American States had apparently "purged" its files concerning the AEC policy, Maryland Casualty sought to introduce microfilmed records concerning the existence of the AEC policy pursuant to the Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108, and the Uniform Photographic Copies of Business and Public Records as Evidence Act, 42 Pa.C.S. § 6109. Maryland Casualty proffered the testimony of Gilbert L. Shaffner, a vice-president of the Robinson–Connor Agency, the successor to the Winters–Boland Agency which issued the PREA and the AEC insurance

policies and the custodian of the microfilm records, in introducing these records. American States argues that Shaffner's testimony lacks trustworthiness because he could offer no information with regard to the preparation of these records. Shaffner's only task was to supervise the microfilming of these records after the sale of the Winters–Boland Agency. American States contends that pursuant to the Uniform Business Records As Evidence Act, 42 Pa.C.S. § 6108, these microfilmed records could not be authenticated since an authenticating witness "must provide sufficient testimony relating to the preparation and maintenance of the records to justify a presumption of trustworthiness for the business records of a company to be admitted into evidence." Appellant's Brief at 37. American States is mistaken. These records are admissible.

Shaffner testified that the records transferred to microfilm were of the type maintained by an insurance brokerage, that the records were reviewed by agency personnel and prepared for microfilming, and that the microfilm is intact and unaltered and that these records have remained in the custody of Shaffner's insurance agency. Shaffner also testified that the agency would rely upon such records to respond to customer inquiries. The Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108, provides, in pertinent part, that:

> [A] record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

The Uniform Photographic Copies of Business and Public Records as Evidence Act, 42 Pa.C.S. § 6109, provides, in pertinent part, that:

> [I]f any business institution ... in the regular course of business or activity, has kept or recorded any memorandum, writing, entry, print, representation, or combination thereof,

of any act, transaction, occurrence or event, and in the regular course of business has caused any or all of the same to be recorded, copied, or reproduced by any photographic, photostatic, microfilm, microcard, miniature photographic, or other process which accurately reproduces or forms a durable medium for so reproducing the original, the original may be destroyed, in the regular course of business, unless its preservation was required by law. Any such reproduction, in order to comply with this section must accurately reproduce all lines and markings which appear on the original. Such reproduction, when satisfactorily identified, is as admissible in evidence as the original itself....

These microfilms were made in the regular course of business by the successor insurance agency to the Winters–Boland Agency, and maintained by the successor agency in order to respond to customer inquiries. The trial court determined that these records were admissible on the basis of Shaffner's testimony and we are unable to conclude that the trial court abused its discretion in allowing these microfilm records to be admitted into evidence.

 Finally, American States asserts that the trial court erred in allowing Maryland Casualty, during its case-in-chief on its counterclaim, to call Richard Sprowls, the claims manager for American States, as if under cross-examination. American States contends that as an employee, Sprowls is not subject to being called as if under cross-examination and cites to 42 Pa.C.S. § 5935. American States suggests that only "... any director or other officer of a person which is party to the record, ..." may be called as if under cross-examination. American States is mistaken. The statute states:

...a party to the record, or a person for whose immediate benefit such proceeding is prosecuted or defended, or any director or other officer of a person which is a party to the record, or for the immediate benefit of which such action or proceeding is prosecuted or defended, *or any other person whose interest is adverse to the party calling him as a witness, may be compelled by the adverse party to testify as if under cross-examination,* ...".

42 Pa.C.S. § 5935 (emphasis added). Not only must a statute be construed in such a manner as to give effect to all of its provisions, *Freeze v. Donegal Mutual Ins. Co.*, 412 Pa.Super. 305, 603 A.2d 595 (1992), but in this Commonwealth, whether an employee's interest is adverse to the party calling him to testify, for purposes of determining whether he could be called as if under cross-examination, is a factual determination within the trial court's discretion. *Gaul v. Consolidated Rail Corp.*, 383 Pa.Super. 250, 556 A.2d 892 (1989), *appeal denied*, 524 Pa. 621, 571 A.2d 383 (1990).

The role of an appellate court in reviewing findings of fact is to determine whether the findings are supported by competent evidence and whether the trial court committed error in the application of the law; the findings of a trial court in a nonjury case must be given the same weight and effect on appeal as the verdict of a jury, and those findings will not be disturbed on appeal absent errors of law or unsupported by competent evidence in the record. *Porter v. Kalas*, 409 Pa.Super. 159, 597 A.2d 709 (1991). The test is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion. *Stahli v. Wittman*, 412 Pa.Super. 281, 603 A.2d 583 (1992). This record fails to persuade us that the trial court abused its discretion in allowing Sprowls, as the claims manager of American States, to be treated as a hostile witness and for Sprowls to testify as if under cross-examination.

### III. Cross–Appeal by Maryland Casualty Company at No. 01241 Pittsburgh 1992

Finally, Maryland Casualty in its cross-appeal asserts that the trial court erred in dismissing its Counterclaim against American States on the basis that the AEC policy was inapplicable. In its Supplemental Opinion and Order of Court, dated October 22, 1991, the trial court ruled that Maryland Casualty would be permitted to raise a defense in the present action based on the AEC insurance policy if Maryland Casual-

ty could establish that PREA was endorsed as an additional named insured on the AEC policy. The trial court, in dismissing Maryland Casualty's counterclaim against American States, found that the AEC policy did not have an endorsement attached listing PREA as an additional named insured. As a result, the trial court also found that American States did not owe a defense to PREA under the AEC policy. Maryland Casualty contends that when the microfilmed records are displayed, the general change endorsement form 9–42 appears between the declaration sheet for the AEC policy but before the cancellation notice in the AEC policy. Thus, it was error for the trial court to find that the AEC policy did not contain an endorsement listing PREA as an additional named insured.

 The scope of our review on the issue of whether the trial court abused its discretion is limited. We are bound by the findings of the trial court which have adequate support in the record. *Gemini Equipment Co. v. Pennsy Supply, Inc.,* 407 Pa.Super. 404, 595 A.2d 1211 (1991). We find no error by the trial court and following our review of this record, we conclude that there is adequate support in the record for the trial court's conclusion that Maryland Casualty failed to meet its burden to prove that the AEC policy contained an endorsement listing PREA as an additional named insured.

The American States underwriter for the AEC policy, Joanne Douglas, testified that an additional named insured is given all the rights under the policy and is, in effect, a co-insured under the policy. In the microfilm records of the Robinson–Connor Agency, the pages of the AEC policy appear in the following order: (1) declaration sheet for the period 3/14/78–3/14/81; (2) endorsement form 9–CL–C; (3) endorsement form 9–206 listing PREA as an additional insured under the policy; (4) endorsement form 9–287 setting forth liability coverage; (5) a general change endorsement form 9–42 listing PREA as an additional named insured; and, (6) a cancellation request/policy release dated 4/1/80. Maryland Casualty argues that since the endorsement form 9–42 appears after the declaration sheet but before the cancellation notice, it was error for the trial court to conclude that the AEC policy as

issued did not contain an endorsement listing PREA as an additional named insured. We disagree.

It is apparent from a review of this record, that the files of the Winters–Boland Agency (the agency which issued the AEC policy) were in disarray. George Buckler, former counsel for Maryland Casualty, testified on cross-examination the the Winters–Boland files were "disorganized" and "all mixed-up." The files were passed around among various attorneys at a deposition of John Boland, and at a subsequent deposition, Boland had difficulty locating requested documents.

Maryland Casualty's counterclaim relied upon these micro-filmed records as this discussion between the court and counsel for Maryland Casualty indicates:

The Court: But how do we know that page 5 (the alleged endorsement) ties into the CL policy (the AEC policy). That is the subject of the lawsuit.

Counsel: Well, your Honor, because it was between the photocopy records ...

The Court: How do we know that some lawyer, when they were going through the files in 1980, didn't just decide to push this piece of paper (the alleged endorsement) into this file?

Counsel: Well, you don't, but actually in the circumstantial evidence that I'm going to argue here, your Honor, and I agree with [opposing counsel], that our evidence is circumstantial in this case because the records cannot be recreated ...

It is obvious from this exchange that the trial court was concerned about the general state of disorganization of the agency files. It is also obvious that counsel for Maryland Casualty agreed with the concern expressed by the trial court.

Here, the American States underwriter, Joanne Douglas, testified that American States underwriting file on the AEC policy had been purged. Ms. Douglas noted that once a file is purged, the only way to recreate the policy and its endorsements, would be through the insurance agent or the insured. Ms. Douglas testified that AEC had three different insurance

policies during the applicable period: a liability policy—the policy at issue, a Workers' Compensation policy and a multi-peril policy. While Ms. Douglas testified that PREA was listed as a named insured on both the Workers' Compensation policy and the multi-peril policy, she testified that there was nothing to indicate that the endorsement in question applied to the liability policy, and that her only memory was that PREA was listed as an additional insured, on the policy in question.

Under cross-examination, Ms. Douglas testified that the endorsement form at issue would not have been used by the underwriting department to add PREA as an additional named insured on the AEC policy. Ms. Douglas testified that a general change endorsement form, 9–42, was not the appropriate form to add PREA as an additional named insured on the policy. She also testified that the endorsement form in the file, 9–206, reflected that PREA had been named only as an additional insured. She noted that if PREA been added as an additional named insured at the time the AEC policy was issued, PREA would have been listed in the declarations page as a named insured, and that the AEC policy would have listed both AEC and PREA on the declarations page.

It is well-established that decisions regarding the weight and the credibility of testimony are within the province of the trier of fact and will not be disturbed upon our cold review of the record. *Gemini, supra; In Re New 12th Ward Republican Club,* 412 Pa.Super. 255, 603 A.2d 205 (1992). Finding competent evidentiary support for the trial court's conclusion, based on Ms. Douglas' testimony, that PREA was not endorsed as an additional named insured on the AEC policy, we will not disturb the decision of the trial court.

Accordingly, for the foregoing reasons, we affirm the decision of the trial court.

Order Affirmed.