

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-31-2007

# Sunoco Inc v. IL Natl Ins Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4992

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Sunoco Inc v. IL Natl Ins Co" (2007). *2007 Decisions.* Paper 1719.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1719

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 05-4992 and 06-1295
_____

SUNOCO, INC.;
SUNOCO, INC. (R&M),
FORMERLY SUN COMPANY INC. (R&M)

v.

ILLINOIS NATIONAL INSURANCE COMPANY,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cv-04087)
District Judges:  Honorable Charles R. Weiner
and Honorable John R. Padova
_____

Argued December 13, 2006
Before:  FISHER, CHAGARES and GREENBERG, *Circuit Judges*.

(Filed: January 31, 2007)

Edward P. Krugman
Cahill, Gordon & Reindel
80 Pine Street
New York, NY  10005

Thomas G. Wilkinson, Jr.
Stephen A. Cozen
John J. Dwyer
Cozen & O'Connor
1900 Market Street, 3rd Floor
Philadelphia, PA  19103

Laura A. Foggan (Argued)
Karalee C. Morell
Wiley, Rein & Fielding
1776 K Street, N.W.
Washington, DC  20006
        *Attorneys for Appellant*

Peter Buscemi
Morgan, Lewis & Bockius
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004

Richard F. McMenamin
Morgan, Lewis & Bockius
1701 Market Street
Philadelphia, PA  19103

David A. Luttinger, Jr. (Argued)
Morgan, Lewis & Bockius
101 Park Avenue
New York, NY  10178
        *Attorneys for Appellees*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

This case comes to us on appeal from the District Court's grant of partial summary judgment and entry of declaratory judgment in favor of Sunoco, Inc. and Sunoco, Inc.

2

(R&M) (hereinafter "Sunoco"), plaintiffs in this case. The District Court determined that Illinois National Insurance Company ("Illinois National") had a duty to defend Sunoco against approximately seventy-seven suits arising from Sunoco's use of a gasoline additive. Illinois National appealed. For the reasons set forth below, we will reverse only so that the District Court may reconsider its decision in light of our holding that one of the seventy-seven cases presented did not arise from the same occurrence as the other seventy-six.

I.

Because we write only for the parties, we will set forth only those facts necessary for our analysis. The factual background of this case is undisputed. Sunoco is part of a global petrochemical corporation that manufactures and markets petroleum products, including gasoline. Since the late 1970s, Sunoco, along with numerous other petrochemical producers, has been using a gasoline enhancer known as methyl tertiary-butyl ether ("MtBE"), an additive that was originally thought to reduce the amount of carbon released into the air during the burning of gasoline.

As of the filing of this appeal, Sunoco was a named defendant in seventy-seven lawsuits asserting claims based on Sunoco's manufacture and distribution of gasoline containing MtBE. Sixty of those lawsuits were consolidated into Multi-District Litigation ("MDL") 1358. The other seventeen remain pending individually.

Prior to the filing of these suits, Sunoco purchased an insurance policy from Illinois National which covers lawsuits based on damage to persons or property. The policy imposes on Illinois National a duty to defend against any claims to which the policy might apply. However, before the policy applies, Sunoco must satisfy two separate self-insured retentions, which are essentially like deductibles. The language regarding the self-insured retentions reads:

> In consideration of the premium charged, it is agreed that the Limits of Insurance for each of the coverages provided by this policy will apply [in] excess of a $250,000 Self-Insured Retention (hereinafter referred to as the Per Occurrence Retention Amount) and an additional Self Insured Retention of $5,000,000 (hereinafter referred to a [sic] the Aggregate Retention Amount.)
> The Per Occurrence Amount:
> (a)  shall apply only to occurrences covered under this policy; and
> (b)  shall apply separately to each such occurrence arising out of such occurrence, and
> (c)  shall include all amounts under the Supplementary Payments section of the policy.[]
> The Aggregate Retention Amount:
> (a)  shall apply only to occurrences covered under this policy; and
> (b)  shall apply to amounts which are greater than the Per Occurrence Retention Amount; and
> (c)  shall not include any amount within the Per Occurrence Retention Amount.

In short, Sunoco must meet two spending thresholds before coverage begins. First, Sunoco must spend $250,000 on each individual occurrence. Then Sunoco must spend an aggregate amount of $5,000,000 in addition to the $250,000 spent on each individual occurrence.

The contract defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy also includes a pollution exclusion, which excludes from coverage any damage which would not have occurred but for the discharge of pollutants. However, the policy also contains an exception to the pollution exclusion. The policy will cover damage caused by the discharge of a pollutant if the discharge of pollutants caused damage away from premises owned or rented by Sunoco.

Sunoco filed this suit after Illinois National refused to defend it against the underlying suits, claiming that Sunoco had failed to meet the self-insured retentions and that coverage was barred under the pollution exclusion. On a motion for partial summary judgment on the issue of duty to defend, the District Court found that all seventy-seven cases constituted a single occurrence. Therefore, Sunoco had met its self-insured retentions. It also stated that coverage was not excluded on the basis of the pollution exclusion. This timely appeal followed.

## II.

Before we can reach the substance of Illinois National's appeal, we must satisfy ourselves that we have jurisdiction. Generally, only final orders are appealable. 28 U.S.C. § 1291. A final and appealable order "is one 'which terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.'" *Dotzel v. Ashbridge*, 438 F.3d 320, 323 (3d

5

Cir. 2006) (quoting *Richerson v. Jones*, 551 F.2d 918, 922 (3d Cir. 1977)). As the District Court's order only granted partial summary judgment, it is not a final order for purposes of section 1291.

However, a district court may certify an order that disposes of fewer than all of the claims in an action pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. *Fed. Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 440 (3d Cir. 2003). When ruling on a 54(b) certification, a district court must satisfy itself that two requirements have been met: first, that the judgment on the particular issue is final and, second, that there is no just reason for the delay. In reaching that conclusion, the district court should avoid boilerplate approval and "clearly articulate the reasons and factors underlying its decision to grant 54(b) certification." *Anthuis v. Colt Indus. Operating Corp.*, 971 F.2d 999, 1003 (3d Cir. 1992). However, the statement of reasons is not a jurisdictional requirement. If the district court's statement of reasons is lacking, we may review the record and satisfy ourselves that the 54(b) certification was properly granted. *Carter v. Philadelphia*, 181 F.3d 339, 345 (3d Cir. 1999).

The District Court's explanation and a review of the record satisfies us that it properly certified its decision under Rule 54(b). Therefore, we exercise jurisdiction pursuant to section 1291.[1]

---

[1]The District Court properly applied Pennsylvania law in this diversity action.

III.

We next address whether the District Court erred in determining that Illinois National had a duty to defend. When considering whether there is a duty to defend, a court must first determine the scope of coverage under the policy and then examine the allegations of the underlying complaints to determine whether those allegations are within the scope of coverage. *Lucker Mfg. v. The Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994). "[T]he factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." *Frog Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999).[2]

Illinois National only has a duty to defend if Sunoco has met the self-insured retentions. As previously indicated, the Sunoco policy included a $250,000 per-occurrence retention and an aggregate $5,000,000 self-insured retention. Sunoco has agreed that it has not spent more than $250,000 on each of the underlying seventy-seven lawsuits. Therefore, Illinois National has a duty to defend only if the seventy-seven cases constitute a single occurrence under the policy.

---

[2]Illinois National argues that the District Court erred when refusing to allow discovery into the facts underlying the seventy-seven lawsuits filed against Sunoco. However, in Pennsylvania, a court should look only to the four corners of the complaint to determine whether an insurer has a duty to defend. *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 109 (Pa. 1999). Therefore, the District Court appropriately refused to allow discovery into the underlying facts.

In order to determine whether there is a single occurrence under Illinois National's policy with Sunoco, we must inquire as to whether there is "one proximate, uninterrupted and continuing cause which resulted in all of the injuries and damage." *Donegal Mut. Ins. Co. v. Baumhammers*, 893 A.2d 797, 813 (Pa. 2006). This "cause test," which we originally set forth in *Applachian Insurance Co. v. Liberty Mutual Insurance Co.*, 676 F.2d 56, 61 (3d Cir. 1982), holds that "[a]s long as the injuries stem from one proximate cause there is a single occurrence." *Id.* The number and magnitude of injuries and the number of plaintiffs do not affect the determination. *Id.*

Courts applying Pennsylvania law in the toxic tort setting have repeatedly found that the negligent inclusion of a potentially dangerous chemical constitutes a single occurrence. For example, in *Liberty Mutual Insurance Co. v. Treesdale, Inc.*, we found a single occurrence that resulted in numerous personal injury claims for asbestos-related injuries. 418 F.3d 330 (3d Cir. 2005). Treesdale manufactured a product known as "Soffelex," which contained asbestos. In the typical case filed against Treesdale, steel workers who worked in the open hearth of steel mills which produced Soffelex sued after being exposed to asbestos. The Treesdale policy defined occurrence as "all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions." We found "[t]hat section unambiguously addresses the situation where, as here, many people allege personal injuries arising from one occurrence." *Id.* at 336. All of the injuries stemmed from a common source – the

8

production and distribution of asbestos-containing products. *Id.* at 335. Therefore, there was a single occurrence that caused multiple injuries. *See also Union Carbide Corp. v. Travelers Indemnity Co.*, 399 F. Supp. 12, 21 (W.D. Pa. 1975) (holding that there was a single occurrence where a manufacturer was sued by numerous plaintiffs after it included a resin in its product that produced an intolerable stench, as the cause of the stench was the inclusion of the resin in the product, not the individual use of the product by the plaintiffs).

The underlying seventy-seven cases before us are not identical. They allege contamination in different geographic regions, they resulted from a variety of sources including gas tank leaks and accidental spills from pipelines, and the plaintiffs vary from individuals to governmental entities. However, despite these differences, all of the injuries alleged, save one, arose from a single occurrence. Each of the plaintiffs in the cases presented in the record allege the same cause of action: injuries resulting from the hazardous manufacture of gasoline containing MtBE and failure to warn. Just as we determined in *Treesdale*, each plaintiff suing Sunoco was exposed to the same general harmful condition – gasoline containing MtBE – which resulted in contaminated ground water. *Treesdale*, 418 F.3d at 336. It is irrelevant how each plaintiff came into contact with the MtBE as the same alleged negligent act of using MtBE was the proximate cause of the harm. *Union Carbide*, 399 F. Supp. at 21.

9

However, the complaint in the case of *West Hazelton Hospitality Corp. v. Sunoco, Inc.*, does not allege the same products liability and failure to warn claims. The *West Hazelton* plaintiffs are suing Sunoco based on the negligent maintenance of a Sunoco gas station that resulted in contamination of the ground water surrounding their hotel. While the complaint in that case refers to the inherent dangerousness of MtBE, it is not the dangerous nature of MtBE that gives rise to the complaint, but a gasoline product that contaminated the ground water surrounding the hotel. Therefore, we will reverse the District Court's decision as to the *West Hazelton* case and remand to the District Court so that it might determine if Sunoco has met its self-insured retentions without its expenditures on *West Hazelton*.

## IV.

As a final effort to sidestep its duty to defend, Illinois National claims that the cases brought against Sunoco fall under the pollution exclusion and are, therefore, outside the purview of coverage. Illinois National claims that because the harm occurred due to a release of pollutants, it need not defend Sunoco. Sunoco has responded by stating that the exception to the pollution exclusion applies as the damage occurred away from property it owned or rented.

"Generally speaking, under Pennsylvania law, the issuer of a general liability insurance policy has a duty to defend its insured when the allegations in the complaint against it could potentially fall within the coverage of the policy." *Air Prods. &*

10

*Chemicals, Inc. v. Hartford Accident & Indem. Co.*, 25 F.3d 177, 179 (3d Cir. 1994). An insurer must defend if any claim included in the complaint may potentially fall under the policy and must continue to defend until it can confine the complaint to a claim that has no possibility of falling under the policy. *American States Ins. Co. v. Md. Cas. Co.*, 628 A.2d 880, 887 (Pa. Super. Ct. 1993). An insurer seeking to avoid its duty to defend based on a policy exclusion has the burden of proving the applicability of that exclusion. *Id.* Once the insurer has met that burden, the insured bears the burden of proving the applicability of an exception to that exclusion. *Air Products*, 25 F.3d at 180.

As the District Court correctly noted, while some of the complaints allege harm caused by leaks on Sunoco's property, none of the complaints allege that the damage occurred on Sunoco's property. Therefore, the exception to the exclusion applies and the plaintiffs in the underlying seventy-seven cases have asserted claims that might fall under the policy. Until Illinois National defends the suits to such an extent that there is no longer a claim that may fall into the exception to the exclusion, it must defend Sunoco. *American States Ins. Co.*, 628 A.2d at 887.

V.

For the reasons set forth above, we agree with the District Court's decision that the pollution exclusion does not excuse Illinois National from its duty to defend. However, we will reverse its decision as the *West Hazelton* case did not arise from the same occurrence as the other seventy-six cases. We will remand the case so that the District

11

Court may consider whether Sunoco has met its self-insured retentions without the

inclusion of expenses from the *West Hazelton* case.