541 A.2d 771

**F.B. WASHBURN CANDY CORPORATION and Zurich Insurance Company, Appellants,**

**v.**

**FIREMAN'S FUND, Philip Packard and John Cepurneek, George Celia, Jr., Harold D. Lynn and Evelyn Lynn, his Wife, Dale Lynn, Jr. and Valley Home Improvement Company, Appellees.**

Superior Court of Pennsylvania.

Argued Nov. 5, 1987.

Filed May 2, 1988.

480

James F. Manley, Pittsburgh, for appellants.

Bernard J. McAuley, Pittsburgh, for appellees.

Before ROWLEY, DEL SOLE and MONTGOMERY, JJ.

DEL SOLE, Judge:

■ This is an appeal from the trial court order dismissing Appellants' exceptions in a declaratory judgment action.[1] The facts of this case are as follows.

Appellant–F.B. Washburn Candy Company, whose general omnibus liability insurance carrier was Appellant–Zurich Insurance Company, contracted with Appellee–Philip Packard for the shipment of Washburn's goods.[2] Appellee–Fireman's Fund[3] provided insurance coverage for Packard. Subsequently, Appellee–John Cepurneek,[4] one of Packard's employees, was delivering Washburn's goods when the truck he was driving collided with a vehicle occupied by Harold D. Lynn and Evelyn Lynn, his wife.

Thereafter, Washburn, Packard, and Cepurneek were named as defendants in a tort action arising from the accident. Upon receiving notice of the suit, Washburn

1. Ordinarily, an order dismissing exceptions is interlocutory and non-appealable until judgment has been entered on the docket. *In Re: Estate of Brockerman*, 332 Pa.Super. 88, 480 A.2d 1199 (1984). Although it would appear that Appellant's appeal was taken prematurely, we note from the record that judgment was entered on May 6, 1987. For this reason, there is no need to quash this appeal. *See generally* Pa.R.A.P. 902.

2. Hereinafter referred to as "Washburn", "Zurich", and "Packard".

3. Hereinafter referred to as "Fireman's Fund".

4. Hereinafter referred to as "Cepurneek".

tendered the defense of the action to Fireman's Fund, claiming that Washburn was an omnibus insured under the insurance policy which Fireman's Fund had issued to Packard. Fireman's Fund disagreed, however, and refused to defend Washburn. For this reason, Washburn tendered the defense of the action to its general liability carrier, Zurich. Zurich, in turn, retained legal counsel so that a defense might be entered on Washburn's behalf. Following a jury trial, a plaintiff's verdict was returned against the defendants.

Thereafter, Washburn and Zurich commenced an action for declaratory judgment against Fireman's Fund for the purposes of having the trial court determine the rights of the parties under the policy Fireman's Fund had issued to Packard, and to recoup the costs associated with Zurich's defense of Washburn. In its Findings of Facts and Conclusions of Law, the trial court found that Fireman's Fund, the insurer of Packard's vehicle, was the primary insurance carrier. Zurich, Washburn's carrier, was held responsible only for excess coverage. Thus, it was concluded that Fireman's Fund should have defended Washburn in the underlying action. The trial court also ruled that Fireman's Fund was not liable to Zurich for the legal fees the excess carrier incurred in the defense of the underlying action or the declaratory judgment action. Exceptions were filed and later denied by the trial court. This appeal follows.

Appellants raise three issues on appeal:

1. Did not the court err in failing to award costs of defense incurred by Zurich Insurance Company in defending an action where the primary insurer of the vehicle involved in the accident, Fireman's Fund, refused to defend an omnibus insured;

2. Did not the court err in failing to award attorneys fees for the prosecution of the within declaratory judgment action; and,

3. Did not the court err in finding as a fact and concluding as a matter of law, that the the (*sic*) owner and operator of the tractor trailer involved in the accident was

an "insured" under the policy of insurance issued by Zurich Insurance Company to F.B. Washburn Candy Corporation.

With respect to the first issue, Appellants argue that Fireman's Fund repeatedly denied any obligation to defend Washburn, thereby acting in bad faith and in repudiation of its contract of insurance. Appellants contend that Fireman's Fund should be prohibited from benefiting from its own breach of contract. Thus, all of the defense costs associated with the underlying action should be paid by Fireman's Fund to Zurich. Appellants appropriately point out that the precise issue before us—whether a primary insurer who refuses to defend an insured under the insurance policy must reimburse an excess carrier for defense costs incurred after the excess carrier renders a defense on the insured's behalf—has not been addressed by the courts of this Commonwealth.

We have, however, had the opportunity to discuss the duties owed by an insurer to its insured after the insurer wrongfully refused to undertake a defense in an action brought by a third party against the policyholder. In *Kelmo Enterprises v. Commercial Union Insurance Co.,* 285 Pa.Super. 13, 426 A.2d 680 (1981), the appellees were forced to engage private counsel after the appellant-insurance company declined to defend the appellees in the underlying tort action. While the action was still pending, the appellees filed a petition for declaratory judgment, seeking a determination of their rights under the policy and an award of counsel fees for the defense of the tort action and the declaratory judgment action. The trial court held that the appellant-insurance company was required to defend the appellees. Likewise, the appellees were awarded attorneys' fees. The appellant-insurance company appealed arguing, *inter alia,* that the trial court erred in awarding the attorneys' fees to the appellees. We affirmed.

With respect to the underlying action brought against the appellees, we opined that "[b]ecause our cases are well settled that in an action in assumpsit for the breach of a

covenant to defend recovery includes the costs of hiring counsel and other costs of defense, the lower court properly awarded appellees attorneys' fees for the defense of the [tort] action." *Id.*, 285 Pa.Superior Ct. at 20, n. 4, 426 A.2d at 683, n. 4. In determining whether or not attorneys' fees should be granted for the declaratory judgment action, we held that "an insured who is compelled to bring a declaratory judgment action to establish his insurer's duty to defend an action brought by a third party may recover his attorneys' fees incurred in the declaratory judgment action if the insurer has, *in bad faith*, refused to defend the action brought by the third party." *Id.* at 426 A.2d at 685, *citing New Hampshire Insurance Co. v. Christy*, 200 N.W.2d 834 (Iowa 1972) (emphasis supplied).

In the case at bar, the trial court distinguished *Kelmo* and similar cases from the instant facts by noting that, even though Fireman's Fund may have breached its duty to Packard or Washburn, there exists no authority in Pennsylvania which states that a similar duty ran from the primary insurer to an excess insurance carrier. The trial court further elaborated that Zurich, being the excess carrier, had its own interest to protect by defending Washburn. Trial Court Opinion, 2/3/87, 2–3.

We disagree with the trial court's conclusion. Rather, we find that the doctrine of equitable subrogation applies to the facts before us:

> [i]t is well established that the action for subrogation is one based on considerations of equity and good conscience. The goal is to place the burden of the debt upon the person who should bear it. The right of subrogation may be contractually declared or founded in equity, but even if contractually declared, it is to be regarded as based upon and governed by equitable principles ... It has often been said that the equitable doctrine of subrogation places the subrogee in the precise position of the one to whose rights and disabilities he is subrogated.

*Allstate Insurance Co. v. Clarke*, 364 Pa.Super. 196, 527 A.2d 1021, 1023–1024 (1987) (citations omitted). Based on

this principle, we are of the opinion that Zurich stands in the same place as Washburn had Washburn been forced to retain private counsel in the underlying action. It is true that there exists no contractual obligation between Fireman's Fund and Zurich. Nevertheless, we are mindful that, while the interests of a primary insurer are virtually unaffected by the existence of excess coverage, the interests of an excess insurer are very much affected by the actions taken by the primary carrier, especially when the latter wrongfully refuses to defend its insured. *Peter v. Travelers Insurance Co.*, 375 F.Supp. 1347, 1350–1351 (C.D.Cal. 1974).

We do not agree with the trial court's conclusion that Zurich should bear the costs of litigation by virtue of the fact that Zurich was only protecting its own interests as an excess carrier. Zurich was placed in the posture of defending Washburn only after Fireman's Fund wrongfully refused to render a defense. Thus, Zurich's duty to defend was activated under inappropriate circumstances. Moreover, under the doctrine of equitable subrogation, Fireman's liability as a primary insurer is not increased by Zurich's recovery of attorneys' fees. The duty owed to Zurich is identical to that which was owed to Washburn but was refused. *See generally Peter v. Travelers Insurance Co., supra,* at 375 F.Supp. at 1350.

Accordingly, under the guidance of *Kelmo Enterprises v. Commercial Union Insurance Co., supra,* we find that Fireman's Fund is responsible for the counsel fees incurred by Zurich in the defense of the underlying action. However, with respect to the attorneys' fees associated with the declaratory judgment action, we observe that the trial court did not determine whether or not Fireman's Fund's refusal to defend Washburn was in bad faith. *Id.* at 426 A.2d at 685. Therefore, we must remand this case to the trial court for this determination. If it is found that Fireman's Fund did act in bad faith, then Zurich is entitled to the counsel fees expended in the declaratory judgment action.

■ Finally, Appellants argue that the trial court erred in finding that Cepurneek was an insured under the insurance policy issued to Washburn by Zurich. However, we need not discuss this issue. The trial court found that Fireman's Fund owed insurance coverage for bodily injury of $300,000 per person, with a maximum of $600,000 per accident. Fireman's Fund was also found to be responsible for $25,000 in property damages. Decree, 8/28/86. The record shows that the jury verdict was less than the limits of insurance coverage set by the trial court. Opinion, 4/22/85, 2. Thus, Zurich as an excess insurance carrier was not called upon to provide coverage in the instant matter. With this being the case, the issue of whether or not Cepurneek is covered under Zurich's insurance policy is moot. Further, we note that the only monetary injury complained of in this appeal concerns the assessment of the attorneys' fees incurred by Zurich.

Order affirmed in part, reversed in part. Case remanded for proceedings consistent with this Memorandum. Jurisdiction relinquished.