580 A.2d 799

FIRST PENNSYLVANIA BANK, N.A. and Leonard and Katherine Neuber

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. and Aetna Life and Casualty.

Appeal of NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

Superior Court of Pennsylvania.

Argued May 3, 1990.

Filed Sept. 19, 1990.

James M. Marsh, Philadelphia, for appellant.

Fredric L. Goldfein, Philadelphia, for Aetna Life, appellee.

Before DEL SOLE, JOHNSON, and HOFFMAN, JJ.

HOFFMAN, Judge.

This appeal is from an order, dated October 11, 1989, granting appellee's motion for summary judgment. Appellant, National Union Fire Insurance Company, argues that the court below erred in: (1) granting appellee's motion; and (2) amending its order on November 21, 1989 to include attorneys' fees. For the following reasons, we affirm in part and reverse in part.

This appeal arises from a declaratory judgment action in which appellee, Aetna Insurance Corporation, sought a determination of insurance coverage owed to the insured, First Pennsylvania Bank, N.A. (bank). The bank was sued by Leonard Neuber (the victim), who was injured following an incident on the roof of the bank's building at 3020

Market Street, Philadelphia. The bank had two insurance policies. One was issued by Aetna, and covered the building but excluded the heliport on the roof of the building. The other was issued by National, and covered the heliport but excluded the building. The victim was injured on the roof in a doorway which led to the area of the helipad. When he filed suit, both insurance companies denied coverage. Thereafter, the bank and the insurance companies settled with the victim. The insurance companies then settled with the bank. The claim between the insurance companies was preserved and submitted to the court for adjudication. On October 11, 1989, the court below granted Aetna's motion for summary judgment. The order was entered into the docket on October 16, 1989. On November 9, 1989, National filed a timely notice of appeal. Thereafter, on November 21, 1989, the court amended its original order granting summary judgment, and ordered National to pay Aetna $52,400, representing Aetna's portion of the settlement the insurance companies entered into with the victim and the bank. National did not appeal separately from that order.

National's argument that the court below erred in granting Aetna's motion for summary judgment is based on two claims. First, National claims that the victim's injury did not occur in an area covered by its policy. Second, National claims that Aetna is liable for the victim's injury because the exclusionary clause in Aetna's policy is inapplicable to this case. We shall address these claims *seriatim*.

Our standard of review of the grant of a motion for summary judgment is well settled:

> A motion for summary judgment may properly be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Summary judgment may be entered only in cases that are clear and free from doubt. Additionally, the record must be examined in the

light most favorable to the non-moving party, accepting as true all well-pleaded facts in its pleadings and giving that party the benefit of all reasonable inferences drawn therefrom. Moreover in summary judgment proceedings, the court's function is not to determine the facts, but only to determine if a material issue of fact exists. Thus an order granting a motion for summary judgment will not be reversed unless the court below has committed an error of law or clearly abused its discretion.

*Kaller's Inc. v. Spencer Roofing*, 388 Pa.Super. 361, 364, 565 A.2d 794, 795–96 (1989) (citations omitted). Furthermore, as we stated in *DiFabio v. Centaur Ins. Co.*, 366 Pa.Super. 590, 531 A.2d 1141 (1987):

The rules that govern our construction of insurance contracts are familiar. As a means of fostering stability and predictability in contractual relationships, the common law has assigned to the court the task of interpreting the intent of the parties. When the language of the contract clearly reflects the parties' intent, the court must give effect to that language. . . . Of course, this general rule of construction does not absolve the court of its obligation to consider the circumstances from which the written instrument sprang. If extrinsic evidence will aid in the resolution of ambiguities, the court must look to it. If, moreover, the extrinsic evidence raises disputed issues of material fact, the court must refer those issues to the fact finder.

*Id.*, 366 Pa.Superior Ct. at 593–94, 531 A.2d at 1142–43 (citations omitted).

■ National's first specific claim is that it is not subject to liability because the doorway in which the victim's injuries occurred was not a "way adjoining" the helipad for purposes of the insurance policy it issued. We disagree.

National provided the bank with a policy that states:

When used in this endorsement, "insured premises" means the premises designated in the schedule and in-

cludes the ways immediately adjoining such premises on land.

*See* R.R. at 62a. The schedule referred to above states:

**(a) Premises–Operations**

1st PA Helipad

3020 Market Street

Philadelphia, Pa.

*See* R.R. at 58a. National notes that the word "way" has been defined by different authorities as "a passage, road or street," and "a course affording passage from one place to another; a course that is or may be used going from one place to another." *See* Appellant's Brief at 12. Viewing the facts of this case in light of the these everyday definitions, it is clear that the court did not err in granting summary judgment. The facts surrounding the victim's injuries are undisputed. The helipad in question sits on a raised platform on top of the roof of the 3020 Market Street building. *See* R.R. at 204a–207a. The victim was performing structural work on the helipad supports when, seeing a helicopter approaching the helipad for landing, he took shelter in a doorway that led out to the helipad from inside the building. When the helicopter lifted off, the victim was injured by the door, which swung shut because of backwash (wind) generated by the helicopter. *See* R.R. at 30a–33a. We have carefully reviewed the record, and there is no evidence of any means of accessing the helipad from inside the building other than this door and others like it. Under these circumstances, the doorway in which the victim sought refuge was a "way adjoining" the helipad for purposes of the insurance policy. We therefore agree with the finding of the court below that the victim was indeed standing in a "way adjoining" the helipad when his injury occurred. *See* Trial Court Opinion, October 11, 1989 at 1.

We find further support for this conclusion by considering the circumstances surrounding the execution of the two insurance policies, and their interrelationship. The record reveals that the bank entered into a contract with Aetna in which Aetna explicitly renounced "liability arising out of

the maintenance, operation, or use of the heliport...." *See* R.R. at 90a. In contrast to Aetna's policy, National agreed to insure the helipad and "ways adjoining it." *See* R.R. at 58a, 62a. Both the policies and the circumstances surrounding them indicate that it was the intent of National and the bank that *National* provide coverage for accidents arising out of the use of the helipad area. It is our duty to give effect to that intent. *See DiFabio v. Centaur Ins. Co., supra.* No interpretation of the above-mentioned policy provisions would justify imposing liability on Aetna in this action to determine liability between the two insurers. Therefore, we hold that National's policy covered the injury in question.

 National's second specific claim is that Aetna is liable for the victim's injuries because Aetna admits liability but for the existence of an exclusionary clause in its policy. National asserts that the exclusionary clause should be strictly construed against Aetna, and is therefore inapplicable to this case. It is true that exclusionary clauses should be strictly construed as a general matter.[1] However, even when strictly construed, we do not agree with National that Aetna's exclusion is inapplicable to this case. In its entirety, the specific exclusion contained in Aetna's policy reads as follows:

### Heliport Exclusion

It is agreed that such coverage as is afforded under Section II—liability coverage does not apply to liability arising out of the maintenance, operation, or use of the heliport at 3020 Market Street, Philadelphia, Pa.

*See* R.R. at 90a. As noted above, the record reveals that the victim was working on the roof when a helicopter used the helipad for lift off, and the wind current generated by the craft's rotor blades caused a door to swing shut on his thumb. These facts show that the victim's injuries resulted from the "use or operation" of the helipad. The language

1. *See Eichelberger v. Warner,* 290 Pa.Super. 269, 434 A.2d 747 (1981).

of Aetna's policy is clear. Aetna is not to be held liable for injuries arising out of such "use or operation." Accordingly, we hold that National's claim regarding the exclusion included in the Aetna's policy is meritless. Therefore, the trial court did not err in granting Aetna's motion for summary judgment.

■ National's second argument is that the trial court erred in amending its original order to include attorneys' fees.[2] Specifically, National argues that because the record reveals no evidence of bad faith on its part, it should not be required to reimburse Aetna's attorneys' fees.

Our standard of review of awards of attorneys' fees is well settled.

> Awards of attorney's fees and costs incurred in bringing an action are within the discretion of the trial court, and will not be reversed on appeal in the absence of an abuse of discretion.

*Szillery v. Wheaton*, 382 Pa.Super. 394, 555 A.2d 237 (1989); *see also Park v. Greater Delaware Valley Sav. & Loan Ass'n*, 362 Pa.Super. 54, 523 A.2d 771 (1987).

■ In evaluating National's argument, we find our opinion in *F.B. Washburn Candy Co. v. Fireman's Fund*, 373 Pa.Super. 479, 541 A.2d 771 (1988) to be instructive. In *Washburn Candy*, a general omnibus liability insurer was forced to defend its client in a suit brought by a party who had been injured by a truck shipping its client's products. That defense was necessitated by the wrongful refusal of

---

2. We note that the court below did not modify its original order until over thirty days after it was entered, and National had taken an appeal therefrom. Generally speaking, such action is prohibited. *See* 42 Pa.C.S.A. § 5505; Pa.R.A.P. 1701; *Simpson v. Allstate Ins. Co.*, 350 Pa.Super. 239, 504 A.2d 335 (1986); *Atlantic Richfield Co. v. J.J. White, Inc.*, 302 Pa.Super. 276, 448 A.2d 634 (1982). We note, however, that National does not question the court's authority to amend the order to include a specific damage amount. Moreover, because the court merely took action to correct a formal error in the papers relating to the matter at issue, its action was proper. *Fish v. Gosnell*, 316 Pa.Super. 565, 463 A.2d 1042 (1983) (where trial court's action requires no exercise of discretion, computation is clerical matter based on amounts appearing on face of record, and no factfinding required, modification of order after appeal taken or thirty day period expired is permissible correction).

the insurer of the shipper to defend the action. Thereafter, the omnibus insurer and its client brought a declaratory judgment action in order to establish the rights of the parties under the shipper's insurance policy and to recoup the costs associated with the omnibus insurer's defense of its client. A unanimous panel of this court, speaking through Judge Del Sole, held that the omnibus liability insurer was entitled to recover the costs and attorneys' fees that it incurred in defending its client "[b]ecause our cases are well settled that in an action in assumpsit for the breach of a covenant to defend recovery includes the costs of hiring counsel and other costs of defense...." *Id.*, 373 Pa.Superior Ct. at 483–84, 541 A.2d at 773. With regard to the issue of liability for costs and attorneys' fees incurred in the declaratory judgment action itself, however, we noted that "an insured who is compelled to bring a declaratory judgment action to establish his insurer's duty to defend an action brought by a third party may recover his attorneys' fees incurred in the declaratory judgment action if the insurer has, *in bad faith*, refused to defend the action brought by the third party." *Id.*, 373 Pa.Superior Ct. at 484, 541 A.2d at 773–74 (citing *Kelmo Enterprises v. Commercial Union Ins.*, 285 Pa.Super. 13, 426 A.2d 680 (1981)). Finally, we rejected the trial court's holding that no duty ran from the shipper's insurer to the omnibus insurer, and held that the omnibus insurer stood in the same place as its insured for purposes of recovering losses incurred in its defense of the insured and the declaratory judgment action. Specifically, we stated that

[W]e find that the doctrine of equitable subrogation applies to the facts before us:

[i]t is well established that the action for subrogation is one based on considerations of equity and good conscience. The goal is to place the burden of the debt upon the person who should bear it. The right of subrogation may be contractually declared or founded in equity, but even if contractually declared, it is to be regarded as based upon and governed by equitable

principles.... It has often been said that the equitable doctrine of subrogation places the subrogee in the precise position of the one to whose rights and disabilities he is subrogated.

*Id.*, 373 Pa.Superior Ct. at 484, 541 A.2d at 774.

The facts of this case are similar to those of *Washburn Candy*. Close examination of the record reveals that National's wrongful refusal to assume liability under the policy it issued to the bank forced Aetna to advance funds to the victim and the bank, and to expend funds for legal fees both to defend the bank against the victim, and to defend itself against National in the declaratory judgment action. As noted above, there is not even a genuine issue of material fact regarding whether National is liable under the terms of its policy. Thus, Aetna's duty to defend the bank was triggered and maintained under inappropriate circumstances. Accordingly, under the principles articulated in *Washburn Candy, supra*, we hold that National is responsible for attorney's fees and costs incurred by Aetna in defense of the underlying action. However, because the court below did not specify which attorneys' fees National is to pay, and because the court made no explicit finding regarding whether National acted in bad faith in the summary judgment action, we remand the case to the lower court for a determination regarding that issue. *See Washburn Candy, supra*. If it is found that National acted in bad faith in the summary judgment action, Aetna is entitled to the attorneys' fees expended in that action, also.

For the foregoing reasons, we affirm the order below to the extent that it granted summary judgment in favor of Aetna Insurance Corporation. We reverse that portion of the order relating to attorneys' fees and remand for proceedings consistent with this Opinion.

Order affirmed in part and reversed in part. Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.