

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-10-1996

# Greater NY Mut'l Ins. v. N. River Ins Co

Precedential or Non-Precedential:

Docket 95-1484

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

## Recommended Citation

"Greater NY Mut'l Ins. v. N. River Ins Co" (1996). *1996 Decisions*. Paper 149.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/149

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 95-1484
_____


GREATER NEW YORK MUTUAL INSURANCE COMPANY

v.

THE NORTH RIVER INSURANCE COMPANY;
CRUM AND FORSTER HOLDINGS, INC.;
RODIN MANAGEMENT INCORPORATED;
CROWN PARK INVESTORS
(D.C. Civil No. 94-cv-05223)


NORTH RIVER INSURANCE COMPANY

v.

GREATER NEW YORK MUTUAL INSURANCE COMPANY
(D.C. Civil No. 94-cv-05554)


Greater New York Mutual Insurance Company,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action Nos. 94-cv-05223 & 94-cv-05554)
_____


Argued March 11, 1996

Before:  STAPLETON, SCIRICA and COWEN, Circuit Judges

(Filed June 10, 1996)


JAMES D. CRAWFORD, ESQUIRE (ARGUED)
Schnader, Harrison, Segal & Lewis
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103

Attorney for Appellant

FRANCIS J. DEASEY, ESQUIRE (ARGUED)
TIMOTHY COSTELLO, ESQUIRE
Deasey, Mahoney & Bender
Three Parkway, Suite 1400
Philadelphia, Pennsylvania 19102-1374

Attorneys for Appellees

_____

OPINION OF THE COURT
_____

SCIRICA, Circuit Judge.


In Trustees of the Univ. of Pennsylvania v. Lexington Ins. Co., 815 F.2d 890 (3d Cir. 1987), we predicted Pennsylvania law would allow a two-tiered or conditional settlement between a plaintiff and an insured when the insurer refused to defend against plaintiff's suit. In this case we predict Pennsylvania law would also permit a two-tiered settlement between a plaintiff, an insured and the insured's excess insurer, when the primary insurer refused to settle plaintiff's claim.

I.

A.

In January 1987, Sandra McIlhenny slipped and bruised herself on the steps of the Crown Park Apartments in Lansdale, Pennsylvania. Three months later she was diagnosed with multiple sclerosis. Shortly thereafter, McIlhenny brought suit in the Court of Common Pleas for Philadelphia County against the owner and manager of the building, Rodin Management, Inc., alleging the fall had precipitated or aggravated a previously dormant condition.

Rodin purchased primary liability insurance from the Greater New York Mutual Insurance Company with a one million dollar limit per occurrence. Rodin also purchased excess general liability insurance from the North River Insurance Company, with coverage from one million to ten million dollars.

Greater New York retained counsel to defend Rodin in McIlhenny's personal injury action, as it was obligated to do under its policy. McIlhenny initially made a demand of $770,000, but later increased the amount to $1 million. Defense counsel recommended settlement between $500,000 and $750,000, but Greater New York made no offer. The case went to trial and after the jury began deliberating, Greater New York offered $350,000. Plaintiff's counsel considered this amount to be a non-offer because "no reasonable person who had sat in that courtroom could make this offer." The jury awarded McIlhenny $4 million. The trial judge molded the verdict resulting in a total award of $5,796,000. Greater New York appealed to the Pennsylvania Superior Court.

The appeal was withdrawn, however, because North River on

behalf of itself and Rodin, negotiated a settlement directly with McIlhenny for $5.25 million. Under the settlement agreement, North River paid McIlhenny $1,949,629 and provided her with a lifetime annuity. In return, McIlhenny released North River and Rodin from all further liability. Because the $5.25 million settlement was greater than the amount McIlhenny received from North River and Greater New York, North River agreed to "exercise its best efforts to recover the full settlement amount from Greater New York through litigation or other proceedings." If North River prevailed, it would retain the first million and 60% of the overage; McIlhenny would receive the remaining 40%. To fund the litigation, McIlhenny channeled North River $400,000 of the one million she received from Greater New York.

B.

Before North River could bring an action against Greater New York, as it had agreed to do, Greater New York brought this suit in federal district court, alleging the settlement was invalid as a matter of law, and that North River and Rodin breached its duty of good faith. Greater New York also sought the return of the one million dollars it had paid McIlhenny.

North River then filed suit in the Court of Common Pleas for Philadelphia County against Greater New York for bad faith on behalf of itself and as the assignee and equitable subrogee of Rodin. North River sought $4,250,000, representing the full value of the settlement less $1,000,000 already paid by Greater New York. Greater New York removed the claim to federal court, and the two cases were consolidated for discovery and trial.

In a pretrial order, the district court upheld the two-tiered settlement and dismissed all of Greater New York's claims against North River. Greater New York Mut. Ins. Co. v. North River Ins. Co., 872 F. Supp. 1403 (E.D. Pa. 1995). Holding two-tiered settlements are permitted under Pennsylvania law, it also determined an excess insurer owes no direct duty of good faith to a primary insurer when negotiating a settlement agreement. Greater New York appeals these orders.

At trial, a jury found Greater New York breached its duty of good faith to Rodin by failing to settle McIlhenny's lawsuit in a timely and satisfactory manner. The jury also found Rodin did not breach its duty of good faith to Greater New York by entering into the two-tiered settlement agreement. It gave North River a verdict for $4,432,324 ($5.25 million minus one million already paid by Greater New York plus other costs). Greater New York contends it was entitled to a directed verdict that it did not breach its duty of good faith. It also appeals certain evidentiary rulings.

II.

A.

The district court had jurisdiction based on diversity of citizenship. 28 U.S.C. 1332. We have jurisdiction under 28 U.S.C. 1291. In diversity cases we must apply the substantive law of the state whose law governs the action. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). The parties agree Pennsylvania law governs. Our review of the district court's interpretations and predictions of state law is plenary. Salve Regina College v.

Russell, 499 U.S. 225, 231 (1991); Wiley v. State Farm Fire & Casualty Co., 995 F.2d 457, 459 (3d Cir. 1993).

B.

The principal issue on appeal is whether the two-tiered conditional settlement assented to by McIlhenny, Rodin, and North River is permitted under Pennsylvania law. Because no Pennsylvania case has directly addressed the enforceability of two-tiered settlement agreements we must predict how the Pennsylvania Supreme Court would decide the issues before us. U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co., 80 F.3d 90, 93 (3d Cir. 1996). But this is not the first time we have examined a two-tiered settlement. In a similar case, after an exhaustive review of Pennsylvania case law and a thorough analysis of the relevant policies, we predicted the Pennsylvania Supreme Court would enforce a two-tiered settlement. Lexington, 815 F.2d 890.

Lexington involved a settlement by the Hospital of the University of Pennsylvania with a personal injury plaintiff. Under the settlement's terms, HUP agreed to pay $2.2 million itself and an additional $4.8 million if it won a suit against its insurer, Lexington, which had refused coverage. Applying Pennsylvania law, we upheld the validity of the two-tiered settlement, subject to the requirements of good faith and reasonableness. Lexington, 815 F.2d at 902. "Prohibiting two-tiered settlements," we noted, may "force insureds to turn down advantageous settlement offers." Id. at 901-02.

We see nothing in the facts of this case that would lead us to a different outcome. Lexington's central rationale that a prohibition on two-tiered settlements would prevent some insureds from accepting advantageous settlements also applies where an excess insurer, an insured and a victim/plaintiff collectively forge a settlement. The mere addition of an excess insurer into the settlement equation does not alter our sense of how the Pennsylvania courts would assess the legality of two-tiered settlements.

Greater New York contends Lexington is inapposite because it involved a bad faith failure to defend while this case involves a failure to settle. Greater New York points out that in failure-to-settle cases the victim/plaintiff, its counsel, and the excess insurer have an incentive to color their testimony about settlement negotiations in the underlying lawsuit in order to recover as much as possible from the primary insurer. In contrast, failure-to-defend-cases brought by an insured against an insurer revolve around contractual duties and typically will not require the testimony of the victim/plaintiff or its counsel.

As Lexington makes clear, there are dangers associated with two-tier settlements, including the prospect of self-dealing and self-serving testimony. See Lexington, 815 F.2d at 902. Arguably this danger is heightened in excess insurer versus primary insurer failure-to-settle cases. But many kinds of cases provide inducements to color testimony, and we routinely leave it to juries to assess the forthrightness and honesty of witnesses. Witness credibility and the reasonableness of settlement agreements are questions of fact. Nothing in Pennsylvania law indicates we should prohibit two-tiered settlements in order to guard against jury

imperfection.  In this case reasonableness and good faith are factual issues that were squarely put to the jury.

### III.

### A.

The central issue at trial was whether Greater New York acted in bad faith in refusing to settle McIlhenny's claims. Greater New York maintains the evidence did not support the jury's finding it had failed to meet its duty.  It argues it presented an adequate defense and believed it would prevail at trial on causation.  Contending it had no affirmative obligation to make a settlement offer, it claims it never received a settlement offer within the range suggested by its counsel.

The district court required North River to prove by clear and convincing evidence that Greater New York did not honestly, intelligently, and objectively evaluate the McIlhenny case for jury verdict potential and settlement value.  See Puritan Ins. Co. v. Canadian Universal Ins. Co., 775 F.2d 76, 79 (3d Cir. 1985) (enunciating standard of proof).  Indeed, Greater New York does not challenge the jury instruction.  Reviewing the record, we find there was ample evidence to support the jury's verdict.  See Walter v. Holiday Inns, Inc., 985 F.2d 1232, 1238 (3d Cir. 1993) (a motion for judgment as a matter of law should only be granted if viewing all the evidence in the light most favorable to nonmovant, no jury could decide in favor of the nonmovant).

The record reveals North River presented substantial evidence of Greater New York's bad faith in evaluating the claim and in refusing to settle.  Regarding causation, Roberta D. Pichini, McIlhenny's counsel in the underlying litigation, testified defense counsel submitted a report from its medical expert, Dr. Alter, which agreed with plaintiff's medical expert, Dr. Poser, that trauma can cause dormant multiple sclerosis to become symptomatic.  Furthermore, defense counsel supplied no expert report that could contradict the findings of plaintiff's rehabilitation witnesses.

With respect to damages, early in the litigation Pichini supplied Greater New York's defense counsel with reports from medical and rehabilitation experts, projecting rehabilitation damages of $5,000,000.  At that time, plaintiff's settlement demand was $700,000 plus repayment of the Workmen's Compensation lien of $77,700.  Pichini testified that she would have recommended acceptance of a pretrial offer of $750,000.  As we have noted, neither defense counsel nor Greater New York made any offer of settlement before trial.  After the jury began deliberating, Greater New York offered $350,000.

Max Solomon, Greater New York's Executive Vice President for Claims, had authority to settle claims between $25,000 and $1,000,000.  Solomon testified that defense counsel wrote a pretrial report for Greater New York on July 12, 1993, four days before trial, offering little or no hope that Rodin could escape liability for McIlhenny's fall.  Defense counsel advised Greater New York there was a 50-50 chance the jury would believe the plaintiff's theory of medical causation and if so, could award a verdict from one to two million dollars.  As a result, defense counsel recommended settlement between $500,000 and $750,000.  On

July 15, 1993, the day before trial, Solomon discussed the McIlhenny case with defense counsel. Solomon admitted that he had not evaluated letters or reports from defense counsel. Despite not having read defense counsel's pretrial report or having discussed the case in any detail with defense counsel, Solomon believed liability was questionable and the case should be tried. As a result, there was no offer of settlement.

North River presented experts to support its claim of a bad faith refusal to settle. Perry S. Bechtle, Esq., testified Greater New York acted in bad faith in not evaluating the case after Dr. Alter examined plaintiff and in failing to settle within Greater New York's policy limits. Some of Greater New York's own witnesses also supported the jury's finding of bad faith. For example, Maureen Rowan, Esq., the defense attorney in the underlying suit, testified she believed it "probably" would have been reasonable to attempt to settle between $500,000 and $750,000 before trial. During the course of her representation, Greater New York never asked her to provide an evaluation of jury verdict potential or settlement value (although four days before trial she wrote and transmitted an unsolicited report). Greater New York's own insurance expert, Walter Zimmer, testified that written evaluations are a necessary part of claims evaluation where the potential exposure exceeds one million dollars. Nonetheless, he admitted that no written evaluations were contained in the McIlhenny file. Together this evidence was more than sufficient for the jury to conclude Greater New York had acted in bad faith in refusing to settle.

B.

There was also substantial evidence of the reasonableness of the settlement. Pamela McKinney, a claims representative for North River, testified that following the verdict she engaged in settlement discussions with McIlhenny's counsel, Pichini. North River settled, she said, because it received an opinion from counsel that Rodin's chances to prevail on appeal were less than 50%. In addition, post-judgment interest was accruing at the rate of $1,000 a day. The settlement agreement resulted in the complete release of all claims against Rodin and satisfied the judgment entered against Rodin.

Pichini testified that she believed the settlement was reasonable. Despite her confidence the verdict would be upheld on appeal, her client was in immediate need of funds for medical care. North River offered expert opinion from Joseph H. Foster, Esq., who testified that after a thorough examination of the trial record, he found the trial judge committed no reversible error. The chances of success on appeal, he said, were "very slim."

Perry Bechtle, Esq., also testified that the chances of success on appeal were very slim. Because post-judgment interest was accruing at the rate of $1,000 a day, and because appeals to the Pennsylvania Superior Court and Pennsylvania Supreme Court would take one to one and a half and two years respectively, he concluded it was reasonable to settle the case for $5.25 million. The settlement agreement gave McIlhenny money for immediate medical care while providing Rodin with complete releases and satisfaction of the judgment.

                                C.
        Greater New York also contends the district court should
have ruled as a matter of law that it did not breach its duty of
good faith.  We do not agree.  The district court correctly
observed that under Pennsylvania law primary insurers owe no direct
duty of good faith to excess insurers.  Greater New York, 872 F.
Supp. at 1409.  But it also correctly ruled North River could, as
Rodin's subrogee, sue Greater New York for acting in bad faith.
Id.  Therefore, we will affirm the district court's refusal to
dismiss all counts of North River's complaint alleging a breach of
Greater New York's duty of good faith.
                                IV.
        Additionally, Greater New York contends the two-tiered
settlement here offends the principles of equitable subrogation.
See Johnson v. Beane, 664 A.2d 96, 100 (Pa. 1995) (discussing the
doctrine under Pennsylvania law).  As we have noted, North River
brought this action as Rodin's subrogee.
        Greater New York contends that under Pennsylvania law a
subrogee can only recover the amount it has paid on behalf of the
subrogor.  See, e.g., Johnson, 664 A.2d at 100 (subrogee stands in
shoes of subrogor and may pursue an action to recover amounts paid
to subrogor); Associated Hospital Service v. Pustilnik, 439 A.2d
1149, 1151 (Pa. 1981) ("It is settled that the right of subrogation
exists only to the extent of actual payment by the subrogee.").
Because North River never paid, nor will it ever pay the second
tier of the settlement agreement, Greater New York maintains North
River cannot recover the amount "payable" under this tier.  Its
liability, if any, therefore must be limited to the first tier.
        But equitable subrogation is a legal construct, employed
by courts when one person, acting involuntarily or under some
obligation, pays the debt of another.  The rule is designed to
facilitate the placement of the burden of debt on the party who
should bear it.  Johnson, 664 A.2d at 100.  And whether in contract
or equity, subrogation "is to be regarded as based upon and
governed by equitable principles."  F.B. Washburn Candy Corp. v.
Fireman's Fund, 541 A.2d 771, 774 (Pa. Super. Ct. 1988) (quotingAllstate
Ins. Co. v. Clarke, 527 A.2d 1021, 1023-24 (Pa. Super. Ct.
1987)).  An insurer, including an excess insurer, upon discharging
an insured's liability, can become equitably subrogated and may
assert its insured's claims against third parties, including a
primary insurer.  Cf. Brinkley v. Pealer, 491 A.2d 894, 898 (Pa.
Super. Ct. 1985) (insurer's payment to insured renders insurer
insured's subrogee and places insured in precise position of
insurer); see also Barry R. Ostranger & Thomas R. Newman, Handbook
on Insurance Disputes   13.05 (1995).
        Subrogation aims to avoid unjust enrichment.  United
States Fidelity and Guar. Co. v. United Penn Bank, 524 A.2d 958,
964 (Pa. Super. Ct.), appeal denied, 536 A.2d 1333 (Pa. 1987).  But
the two-tiered settlement here will not result in North River
obtaining any more money than it paid to McIlhenny on behalf of
Rodin.  As the district court pointed out, the settlement only
permits North River to reimburse itself for amounts already paid to
McIlhenny.  Any amount in excess of the first tier will be paid to
McIlhenny.  Greater New York, 872 F. Supp. at 1410.  North River

has not sued Greater New York for more than it owes on behalf of Rodin; what it pays for Rodin will turn on its suit against Greater New York. Moreover, the fact that McIlhenny accepted a second-tier as part of the settlement does not create a cause of action for North River against Greater New York, nor does it make North River's suit against Greater New York more likely to succeed on the merits.

What Greater New York contests is that the level of payment to McIlhenny may vary depending on whether North River can make out a successful claim against Greater New York. As noted, Greater New York contends the right of subrogation exists only to the extent of actual payment by the subrogee. Yet in view of our discussion of the purposes of subrogation, without contrary direction from the Pennsylvania courts, we see no reason to proscribe two-tiered settlements because they involve payments conditioned on the outcome of suits by excess insurers against primary insurers.

## V.

Greater New York also contends North River owed it a duty of good faith in negotiating the settlement, and the district court erred by dismissing its claim for breach of duty. Confronted with an absence of definitive Pennsylvania case law, the district court looked to our prior holding in Puritan Ins. Co. v. Canadian Universal Ins. Co., 775 F.2d 76, 79 (3d Cir. 1985) (Pennsylvania would reject the theory of a direct duty running from primary to excess insurer), and to the Pennsylvania Supreme Court's decision in D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins., 431 A.2d 966, 969-70 (Pa. 1981) (there is no common law cause of action arising in tort for failure to act in good faith in connection with an insurance policy). Because a primary insurer owes no direct duty of good faith to an excess insurer, the district court could "see no reason" why this duty would run in the opposite direction. Therefore, the district court held that an excess insurer owes a primary insurer no direct duty of good faith under Pennsylvania law. Greater New York, 872 F. Supp. at 1406.

Nonetheless, Greater New York contends the district court was mistaken. It argues "[t]his duty arises as matter of law based on the doctrine of subrogation, and arises as a matter of necessity if an excess insurer is to be allowed to negotiate two-tiered settlement agreements."

Because in Lexington we approved two-tiered settlements subject to the conditions of "reasonableness and good faith," Greater New York contends that by negotiating a two-tiered settlement, North River assumed a duty of good faith. Greater New York also argues that because an insured owes a duty of good faith to its insurer, North River, by negotiating on behalf of its insured and becoming its subrogee, assumed the insured's duty to act in good faith.

We are not convinced. Lexington's requirement of "good faith and reasonableness" attaches to the settlement between the plaintiff and the insured or those standing in its place. It does not create an independent set of duties running between primary and excess insurers. Even if under Pennsylvania law an insured owes a duty of good faith to its insurer, equitable subrogation does not

create a distinct duty of good faith between the insured's subrogee, here the excess insurer, and a primary insurer.

Although Greater New York suggests two-tiered settlements necessitate the imposition of a duty of good faith on an excess insurer, nothing in Pennsylvania law indicates that equitable subrogation creates a duty of excess insurer to a primary insurer, independent of the duties the excess insurer assumed as subrogee. Of course, North River, as Rodin's subrogee, in its suit against Greater New York became subject to the claims and defenses Greater New York was entitled to assert against Rodin. See U.S. Fire Ins. Co. v. Royal Ins. Co., 759 F.2d 306, 309 (3d Cir. 1985) (with equitable subrogation "[i]t follows the excess insurer should assume the rights as well as the obligations of the insured in that position").

Yet the existence of Rodin's duty is undisputed. Indeed, the jury in the Greater New York-North River suit found that Rodin had not breached its duty of good faith to Greater New York. In so doing, the jury established that North River did not breach the only form of duty it might have had to Greater New York.

## VI.

Finally, Greater New York argues the district court erred by precluding the testimony of one of its central witnesses, Joseph McMahon, an employee with responsibility for handling McIlhenny's personal injury claim. Before trial, Greater New York represented that McMahon was seriously ill and could not be deposed or testify at trial. Then, on the Friday before trial he was deemed well enough to appear. The jury had already been selected and the discovery deadline had long since passed. So had the date for submitting pre-trial memoranda. McMahon was not listed in pre-trial documents as a prospective witness. For several months Greater New York had insisted that McMahon would be unable to testify at deposition or at trial. North River relied on this representation in preparing for trial. For these reasons, the court determined his appearance would be highly prejudicial to North River. Balancing the equities, the court found the prejudice to North River from allowing McMahon to testify would be far greater than any potential prejudice to Greater New York.

Greater New York asserts this ruling "eviscerated" its ability to defend itself against the charge that it handled the McIlhenny claim in bad faith, and challenges the district court's ruling. We review such judgments under an abuse of discretion standard. See Sowell v. Butcher & Singer, Inc., 926 F.2d 289, 301 (3d Cir. 1991). In light of the district court's thoughtful consideration of the equities, and its sound reasons, articulated after a hearing, we find the court acted well within its authority. We see no abuse of discretion.

## VII.

Neither these alleged evidentiary errors nor the court's rulings on the issue of Greater New York's duty of good faith provide any basis for concluding the district court abused its discretion. Therefore, we find Greater New York's motion for a new trial was appropriately denied. See Dunn v. Hovic, 1 F.3d 1362, 1364 (3d Cir.), cert. denied, 114 S. Ct. 650 (1993) (denial of motion for new trial is reviewed for abuse of discretion).

## VIII.

For the foregoing reasons we will affirm the judgment of the district court.