# American States Insurance Co. v. State Auto Insurance Co.

C.P. of Armstrong County, no. 1994-1161-Civil.

*Daniel P. McDyer,* for plaintiff.
*John K. Heisey,* for defendant Motorist Mutual Insurance Co.

VALASEK, *J.,* July 18, 1997—Before the court for disposition is plaintiff American States Insurance Company's motion for summary judgment against defendant Motorists Mutual Insurance Company.

## FACTUAL BACKGROUND

A complete history of this case was stated by the court in its opinion of October 18, 1996. It need not be recited again. By virtue of said opinion and its accompanying order, a motion for summary judgment filed by Motorists against American States was dismissed.[1] Motorists then filed a motion for reconsideration on November 1, 1996, which this court granted. Following oral argument on the matter, the court affirmed its prior holding in a memorandum and order dated February 5, 1997. American States filed its present motion on April 10, 1997.

## DISCUSSION

The primary issue before the court may be stated as follows: Is Motorists obligated to reimburse American States for moneys paid by American States on behalf of Ronald and Helen McIntire in settlement of the underlying tort claim? A host of secondary issues must be addressed and resolved in order to determine if Motorists is under such an obligation. These secondary issues revolve around the applicability of the doctrine

---

1. The opinion and order also dealt with several other motions for summary judgment filed by several other parties.

of equitable subrogation and around the duty of Motorists to indemnify McIntire[2] under the terms of its commercial motor vehicle policy.

## EQUITABLE SUBROGATION

The Superior Court of Pennsylvania applied the doctrine of equitable subrogation in *F.B. Washburn Candy Corp. v. Fireman's Fund*, 373 Pa. Super. 479, 541 A.2d 771 (1988). In that case, Washburn leased a truck owned by Philip Packard for the purpose of shipping some of its own goods. Packard's insurer at the time was Fireman's Fund. During the course of the delivery of the goods there was a collision between Packard's truck, being driven at the time by one of Packard's employees, and another vehicle. The occupants of the other vehicle sustained injuries and subsequently brought a tort action against Washburn, Packard and the truck driver.

Upon receiving notice of the suit, Washburn tendered the defense of the action to Fireman's Fund, claiming that it was an omnibus insured under the liability insurance policy it had issued to Packard. Fireman's Fund disagreed, however, and refused to defend Washburn. As a result, Washburn tendered the defense of the action to its own general liability insurer, Zurich Insurance Company. Following a jury trial, a plaintiff's verdict was returned against the defendants.

Washburn and Zurich subsequently commenced a declaratory judgment action against Fireman's Fund for the purposes of having the trial court determine the rights of the parties under the Fireman's Fund policy, and to recoup the costs associated with Zurich's defense

---

2. The insureds under the terms of the Motorists policy were Ronald McIntire and DI-MAC Enterprises Inc., collectively referred to as "McIntire."

of Washburn. The trial court found that Fireman's Fund was the primary insurer and that Zurich was an excess insurer. The trial court held that Fireman's Fund should have defended Washburn in the underlying tort action, but the trial court also held that Fireman's Fund was not liable to Zurich for the legal fees that it incurred in defending Washburn in the underlying action or in the declaratory judgment action.

On appeal, the Superior Court reversed the trial court's decision in part, and held that Fireman's Fund was indeed liable to Zurich for the legal fees that it incurred in defending Washburn in the underlying action, despite the fact that Fireman's Fund had no contractual obligation to Zurich. In refuting the trial court's conclusion that Fireman's Fund as the primary insurer owed no legal duty to Zurich as the excess insurer, the Superior Court applied the doctrine of equitable subrogation: "[i]t is well established that the action for subrogation is one based on considerations of equity and good conscience. *The goal is to place the burden of the debt upon the person who should bear it.* The right of subrogation may be contractually declared or founded in equity, but even if contractually declared, it is to be regarded as based upon and governed by equitable principles . . . It has often been said that *the equitable doctrine of subrogation places the subrogee in the precise position of the one to whose rights and disabilities he is subrogated. Allstate Insurance Co. v. Clarke,* 364 Pa. Super. 196, 527 A.2d 1021, 1023-24 (1987). (citations omitted) Based on this principle, we are of the opinion that Zurich stands in the same place as Washburn had Washburn been forced to retain private counsel in the underlying action." *Washburn, supra* at 484, 541 A.2d at 774. (emphasis added)

The Superior Court recognized that the interests of Zurich as the excess carrier were very much affected

by the actions taken by Fireman's Fund as the primary insurer—especially when those actions amounted to wrongfully refusing to defend its insured.

Although the Superior Court in *Washburn* did not address the issue, there appears to be no logical reason why the doctrine of equitable subrogation should not also apply to payments made in settlement of the underlying claim.[3]

In ruling that the doctrine potentially applies to the case at bar, this court is expressing its willingness to place the burden of the "settlement debt" upon the person who should properly bear it. Of course, the court's analysis has not yet progressed far enough for it to state that Motorists is the person who should properly bear the "settlement debt" in the instant matter.

Having concluded that the doctrine of equitable subrogation can potentially apply to a case of this general nature, the court must necessarily go on to determine if the concrete facts and circumstances present here call for its application.

Accordingly, the next issue to be addressed is whether Motorists would be under a duty to now indemnify McIntire if he (rather than American States) had paid the moneys that settled the underlying tort claim. This is a critical issue because American States, as a subrogee, stands in the same position as McIntire, its subrogor. If McIntire could not recover such settlement moneys from Motorists, neither can American States.

---

3. See *American States Insurance Co. v. Maryland Casualty Co.*, 427 Pa. Super. 170, 628 A.2d 880 (1993), *affirming*, 39 P.L.J. 316 (1991), where the Superior Court and the trial court (Judge Wettick) were apparently willing to apply the doctrine to a case where a primary insurer allegedly breached its duty to act in good faith.

## CONDITIONAL DUTY TO INDEMNIFY

American States asserts that the duty to indemnify "follows" the duty to defend, and that a breach of the latter activates or triggers the former under the circumstances of this case. American States relies on *Pacific Indemnity Co. v. Linn,* 766 F.2d 754 (1985),[4] in support of its assertion that Motorists was under a duty to indemnify McIntire. In *Linn,* the plaintiff insurer brought a declaratory judgment action to determine which other insurers had a duty to defend and indemnify claims against a physician (Dr. Linn) for injuries suffered by some readers of a book written by him and setting forth a diet program injurious to those readers. Liability was asserted against Dr. Linn for malpractice, professional negligence, breach of warranty and products liability. Pacific agreed to defend Dr. Linn under a reservation of rights in cases falling within its policy period, while the other insurers refused to defend him against any of the claims.

While the court was rendering its decision on Pacific's declaratory action, all but one of the underlying claims had been terminated by settlement or by verdicts in favor of Dr. Linn. After finding that several of the insurers, including Pacific, had a duty to defend Dr. Linn in the underlying claims, the court, applying Pennsylvania law, held that, with regard to the claims that were settled, the duty of the sundry insurers to indemnify necessarily had to follow their duty to defend because settlement made it impossible to determine on what theories of liability, if any, the underlying claimants would have prevailed:

---

4. The district court's opinion can be found at 590 F. Supp. 643 (1984). It is helpful to also read this lower court opinion.

"Unlike the duty to defend, the duty to indemnify, 'cannot be determined merely on the basis of whether the factual allegations of [the underlying] complaint potentially state a claim against the insured.' Rather, there must be a determination that the insurer's policy actually covers the claimed incident. . . . Thus, the duty to defend in effect carries with it the conditional obligation to indemnify until such time as it becomes clear that there can be no recovery within the insuring clause." *Linn, supra,* 590 F. Supp. at 650-51. (citations omitted)

According to the court, since all of the relevant underlying cases were settled, leaving no factual findings to establish which claims, if any, the underlying plaintiffs would have prevailed on, the insurers were unable to confine potential claims to those clearly outside the scope of coverage. Thus, the court held them all responsible for any payments made in settling the underlying claims.

On appeal, with regard to the issue of the duty to indemnify, the U.S. Court of Appeals affirmed the district court's holding that the duty to defend carries with it the conditional obligation to indemnify until it becomes clear that there can be no recovery within the insuring clause.

With regard to American States' assertion that Motorists was under a conditional duty to indemnify McIntire, Motorists first contends that it did not breach its duty to defend McIntire in the underlying tort action.[5] We disagree. That issue was decided by this court in its opinion of October 18, 1996. In that opinion, we held that Motorists had a duty to defend based on the

---

5. If Motorists' contention is correct, then it could not have been under a conditional duty to indemnify.

averments contained in the underlying tort complaint and on certain provisions in its insurance policy.[6] We will not further address the issue in this opinion.

Motorists' second contention is that, even if it breached its duty to defend, the duty to defend and the duty to indemnify are separate and distinct, and that a breach of the duty to defend has no implications with regard to the duty to indemnify. In support of this, Motorists relies on *Gedeon v. State Farm Mutual Automobile Insurance Co.*, 410 Pa. 55, 188 A.2d 320 (1963). In *Gedeon*, the insurer refused to defend its insured in a wrongful death suit arising from an automobile accident. The insured did not hire substitute counsel or spend other funds in defense of the suit. A jury verdict was rendered against him. The insured thereafter sued his insurer for the amount of the verdict, claiming the insurer had breached its duty to defend.[7] The Supreme Court affirmed the lower court's holding that, even if the insurer did breach its duty to defend, the insured had shown no damages resulting from the breach since he incurred no defense costs. In reaching

---

6. On pages 31-32 of our opinion, we stated as follows:

"In the case at bar, it is not discernible from the allegations of the underlying complaint whether Kimmel's vehicle was a 'covered auto.' The parties have merely stipulated that the Kimmel vehicle was not one of the six specifically described autos on the declarations page. It is possible that the Kimmel vehicle came within the definition of a 'covered auto' because of the above quoted policy language concerning 'temporary substitute autos.'

"Therefore, Motorists was under a duty to defend until such time as it could be judicially established that the Kimmel vehicle was not a 'covered auto' under any definition of 'covered auto' found in the policy."

7. Importantly, the insured did not sue for a breach of the insurer's duty to indemnify or its duty to act in good faith.

its decision, the court described three duties associated with automobile insurance coverage:

"Under a typical automobile liability insurance policy, such as the one before us, the insurer undertakes three distinct types of obligations, each of which involves different elements of proof to establish breach thereof, and from the breach of which different measures of recovery result. In the first place, the insurer agrees to indemnify against liability for personal or property damage and to indemnify against certain kinds of property damage to the automobile itself. In order to establish breach of this promise to indemnify, the insured must demonstrate that the policy covers the particular risk in question. The amount of recovery for breach of this obligation is usually determined by the terms of the policy.

"Secondly, the insurer agrees to defend the insured against any suits arising under the policy 'even if such suit is groundless, false, or fraudulent.' Since the insurer thus agrees to relieve the insured of the burden of defending even those suits which have no basis in fact, our cases have held that the obligation to defend arises whenever the complaint filed by the injured party may *potentially* come within the coverage of the policy. . . . Consequently, there may be an obligation to defend although no obligation to indemnify. . . . Based on the usual contract rule for determining damages, the recovery for breach of the covenant to defend will ordinarily be the cost of hiring substitute counsel and other costs of the defense. This recovery may be in addition to any other obtained against the insurer.

"Thirdly, by asserting in the policy the right to handle all claims against the insured, including the right to make a binding settlement, the insurer assumes a fiduciary position towards the insured and becomes ob-

ligated to act in good faith and with due care in representing the interests of the insured. . . . Once again there can be a breach of this fiduciary duty without a breach of either the covenant to indemnify or the covenant to defend." *Gedeon, supra* at 58-60, 188 A.2d at 321-22. (footnotes omitted) (citations omitted)

According to Motorists, *Gedeon* stands for the proposition that an insurer who breaches its duty to defend is not liable to the insured for anything other than the costs the insured spends to defend himself. Therefore, says Motorists, even if it did breach its duty to defend Mr. McIntire, it is responsible for no more than costs of defense incurred by him.

A proper reading of *Gedeon* reveals that it does indeed stand for the proposition that the duty to defend, the duty to indemnify, and the duty to act in good faith are all separate and distinct duties, each carrying its own measure of damages in the event of breach. A close reading of *Gedeon* also reveals that it says nothing else about the duty to indemnify since, of course, the plaintiff did not sue for a breach of the duty to indemnify. Even more specifically, *Gedeon* does not stand in opposition to *Linn*, as there the federal court ruled that, under certain circumstances, an insurer's breach of the duty to defend can activate or trigger an insurer's duty to indemnify.

It can rightly be concluded, therefore, that nothing in *Gedeon* precludes the application of the principles enunciated in *Linn* to the case at bar. But the question still remains of whether *Linn* applies to the facts and circumstances of the instant matter, *i.e.*, whether Motorists' breach of its duty to defend activated its duty to indemnify. The court believes it did not.

The critical distinguishing factor between *Linn* and the present case is that in *Linn*, the determination of which insurance company was under a contractual duty to indemnify was precluded by the settlement of the underlying actions.[8] The federal court held that, with regard to the claims that were settled, the duty to indemnify necessarily had to follow the duty to defend because settlement made it impossible to determine on what theories of liability, if any, the underlying claimants would have prevailed had each claim gone to trial, thereby precluding a determination of which insurer's policy coverage applied.

However, in the present case, the settlement of the underlying tort claim has not made it impossible to determine if the Motorists policy provided coverage. The issue of whether the vehicle being driven by Kimmel at the time of the accident was a "temporary substitute auto" under the terms of the Motorists policy is one that would not have been resolved in the tort litigation, even if it had gone to trial. The issue would not have been relevant to the tort plaintiffs in their proving liability or damages; nor would it have been relevant to anyone's defense. It would not have been a proper subject of a special interrogatory answerable by the jury. Indeed, McIntire's tort trial counsel would have been precluded from introducing facts which would have defeated his claim of coverage, since doing so would have constituted a violation of counsel's obligation to zealously represent the interests of his client. In short, the settlement of the underlying tort claim

---

8. It will be recalled that liability was asserted against Dr. Linn on a number of claims, including malpractice, professional negligence, breach of warranty and products liability, each involving policy coverages issued by different insurers.

in the instant matter has not made it impossible to determine if the Motorists policy provided McIntire with coverage, and the rationale for applying the "duty to indemnify follows the duty to defend" rule enunciated in *Linn* simply is not present. Therefore, it should still be possible for Motorists to demonstrate that the underlying tort claim was one outside the scope of its policy coverage.[9]

## EXPLICIT CONTRACTUAL DUTY TO INDEMNIFY

The court's ruling that Motorists was not under a conditional duty to indemnify McIntire, of course, defeats American States' claim that it is entitled to summary judgment on the issue of liability. The court's ruling, however, does not answer the question of whether indeed

9. In its reply brief, American States relies upon *American States*, *supra*, note 3, in addition to *Linn*, as authority for the proposition that this court may not now make a post-settlement determination of the coverage of the Motorists policy insofar as it relates to Motorists' duty to indemnify McIntire. A reading of *American States*, however, reveals that it concerned an insurer's duty to defend, not indemnify. The Superior Court affirmed the trial court's decision to overrule a prior partial summary judgment entered in the same case by a different trial judge, who declared that an exclusion in Maryland Casualty's liability policy did not apply to the tort plaintiff's claim. The Superior Court ruled that such a post-settlement judicial determination was not relevant in determining whether Maryland Casualty had a duty to defend. Instead, the court held that Maryland Casualty's duty to defend (not duty to indemnify) was determinable by the allegations of the tort plaintiff's complaint. This, of course, is the principle of law applied by this court to the instant matter in its opinion and order dated October 18, 1996. Lastly, the court notes that the summary of *American States* set forth in American States' reply brief is not factually accurate.

the Kimmel vehicle was a "temporary substitute auto" under the Motorists policy. If it was, Motorists could still possibly be under a duty to indemnify McIntire. If it was not, Motorists could be under no such duty.

McIntire has filed affidavits[10] with the court in connection with the current summary judgment motion. The affidavits are admissions by McIntire that the Kimmel vehicle was not a "temporary substitute auto" within the meaning of the Motorists policy. In effect, McIntire admits that the Motorists policy provided him no coverage for the accident of April 3, 1990.

However, Motorists has not filed a motion for summary judgment and, accordingly, the court may not enter a judgment in its favor.

An appropriate order will be entered denying American States' motion for summary judgment.

## ORDER

And now, July 18, 1997, for reasons stated in the foregoing opinion, it is hereby ordered, adjudged and decreed that the motion for summary judgment filed by plaintiff American States Insurance Company be denied and dismissed.

---

10. One has been executed by Ronald and Helen McIntire. The other has been executed by officers of DI-MAC Enterprises Inc. The affidavits were made part of the record on June 20, 1997. Until said date, McIntire's position had been that the Motorists policy did provide coverage and that it was under a duty to indemnify him. See paragraphs 34 and 35 of American States' complaint and McIntire's answer thereto.